375 So.2d 1319 (1979)
James CORSEY, Plaintiff-Appellant-Relator,
v.
The STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS, et al., Defendants-Appellees-Respondents.
No. 63931.
Supreme Court of Louisiana.
October 8, 1979.
*1320 Joseph S. Russo, Jefferson, for plaintiff-applicant.
William J. Guste, Jr., Atty. Gen., J. Marvin Montgomery, Asst. Atty. Gen., for defendant-respondent.
TATE, Justice.
The plaintiff Corsey was a prisoner at the state penitentiary. He sues the state department of corrections for personal injuries sustained on June 18, 1972. He did not file suit so as to interrupt prescription until June 25, 1974.[1] Since this legal demand was made more than one year after the tortious injury was sustained, La.Civ.C. arts. 3536, 3537, his suit was dismissed as prescribed. 366 So.2d 964 (La.App. 1 Cir. 1978).
We granted certiorari, 368 So.2d 127 (February 23, 1979). We desired to consider whether prescription could run against the plaintiff (a prisoner within the total control of the defendant state agency) when, due solely to the defendant's negligence, the tort-caused physical and mental (brain) injuries to the plaintiff so mentally incapacitated him that he lacked any understanding of what had happened to him and of his possible legal remedies until July 1973, when he began to recover an awareness of the events and of his condition.[2]
*1321 For the reasons set forth more fully below, we hold that, under these facts, prescription did not begin to run against the plaintiff until July 1973. Therefore, his legal demand of June 1974 was timely. In so holding, we rely upon the principle that prescription does not run against a party who is unable to act (a principle often denoted by the maxim contra non valentem agere nulla currit praescriptio). The principle is especially applicable in the present instance, where the plaintiff's inability to act is due to the defendant's willful or negligent conduct.

I.
The specific issue before us[3] is whether the year within which the plaintiff must bring his tort action for personal injuries negligently caused by the defendant, La. Civ.C. arts. 3536, 3537, is interrupted or suspended during the period in which, due to the defendant's negligent conduct, the plaintiff had incurred such mental incapacity as to be unable to assert a legal demand to recover for such injuries.
Article 3521 of our Civil Code provides, "Prescription runs against all persons, unless they are included in some exception established by law [i.e., legislation]." (Italics ours.) Despite the express statutory provision, our Louisiana jurisprudence has recognized a limited exception where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. French jurisprudence (despite an identical provision in the French Civil Code) likewise recognizes this exception. Comment, The Scope of the Maxim Contra non Valentem in Louisiana, 12 Tul.L.Rev. 244 (1938); Planiol, Civil Law Treatise, Volume 1, Section 2704-05, Volume 2, Section 678 (LSLI translation, 1959).
The exception is founded on the ancient civilian doctrine of contra non valentem agere nulla currit praescriptio, predating and within the penumbras of modern civilian codes, and it has been recognized from Louisiana's earliest jurisprudence.[4] Comment, 12 Tul.L.Rev. 244, cited above; Henson v. St. Paul Fire & Marine Ins. Co., 363 So.2d 711 (La.1978); Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916); McKnight v. Calhoun, 36 La.Ann. 408 (1884); Quierry's Ex'r & Faussier's Ex'rs, 4 Mart. (O.S.) 609 (1817).

II.
As the cited comment notes, 12 Tul. L.Rev. at 253-54, this court in Reynolds v. Batson, 11 La.Ann. 729, 730-31 (1856), authoritatively lays down the three categories of situations in which our early jurisprudence held that the principle contra non valentem applied so as to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;[5] (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting[6]; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.[7]
*1322 Modern jurisprudence also recognizes a fourth type of situation where contra non valentem applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. Cartwright v. Chrysler Corporation, 255 La. 597, 598, 232 So.2d 285 (1970); Sumerall v. St. Paul Fire & Marine Ins. Co., 366 So.2d 213 (La. App. 2 Cir. 1978).)
See: Henson v. St. Paul Fire & Marine Ins. Co., 363 So.2d 711 (La.1978); Lakefront Land Co. v. Department of Highways, 212 La. 16, 31 So.2d 280 (La.1947); Brulatour v. Teche Sugar Co., 209 La. 717, 25 So.2d 444 (La.1946); Walter v. Caffal, 192 La. 447, 188 So. 137 (1939); McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413 (La.1938); Succession of Williams, 168 La. 1, 121 So. 171 (La.1929); McClendon v. State, Through Dept. of Corrections, 357 So.2d 1218 (La.App. 3 Cir. 1978); Brown v. State, Through Dept. of Corrections, 354 So.2d 633 (La.App. 1 Cir. 1978);[8]Aegis Insurance Co. v. Delta Fire & Casualty Co., 99 So.2d 767 (La.App. 1 Cir. 1957). See also: Dean v. Hercules, Incorporated, 328 So.2d 69 (La.1976).
This fourth or more modern situation, which has been judicially characterized as a contra non valentem exception to the running of prescription, is generically similar to instances provided by statute where prescription does not begin to run until the claimant has knowledge of his cause of action.[9] In these, the cause of action does not mature (so prescription does not begin to run) until it is known or at least knowable.
The fourth situation is thus generically somewhat distinguishable from the earlier three situations first recognized to justify exceptions to prescription on the basis of contra non valentem. In them (as in the present case, as we will show), the cause of action had accrued, but nevertheless the plaintiff was prevented from enforcing it by some reason external to his own will the courts closed by wartime conditions, some contract or administrative condition preventing his access to the courts, or some conduct of the defendant which prevented him from availing himself of his judicial remedy.
In concluding our general discussion of the application of contra non valentem, we should finally note that the Louisiana jurisprudence, as does the French,[10] distinguishes *1323 between personal disabilities of the plaintiff (which do not prevent prescription from running) and an inability to bring suit for some cause foreign to the person of the plaintiff (which does suspend its running).
Thus, a person whose ignorance of his cause of action or inability to assert it is the result of his own mental incapacity cannot claim the benefits of this rule unless he has been interdicted.[11]Israel v. Smith, 302 So.2d 392 (La.App. 3 Cir. 1974), cert. denied, 303 So.2d 183 (La.1974);[12]Buvens v. Buvens, 286 So.2d 144 (La.App. 3 Cir. 1973), Lassere v. Lassere, 255 So.2d 794 (La.App. 4 Cir. 1972), cert. denied, 257 So.2d 434 (La.1972). Perrodin v. Clement, 254 So.2d 704 (La.App. 3 Cir. 1971). Cf., Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922).
Likewise, a plaintiff cannot invoke contra non valentem to escape the running of prescription based merely upon his inability to attend to his affairs because of his personal illness, Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951)at least when this illness arises independently of any fault on the part of the defendant.

III.
In the present instance, we are not, strictly speaking, concerned with whether the plaintiff Corsey's cause of action had accrued or matured at the time of the incident, for it had: the damage was immediately discernible to a person of ordinary diligence and capacity. Nor are we concerned with his mental competency per se, since (as he was not interdicted) he is a person subject to having prescription run against his cause of action.
Here, however, unlike mere mental incompetency (which will not suspend prescription), the defendant's own tort has produced the plaintiff's mental and physical inability to file suit during the period of tort-caused incompetency. The values at issue are not similar to those which control in cases of mere mental incompetency; they are more analagous to those which permit invocation of contra non valentem to suspend prescription because the defendant has concealed information or has otherwise prevented the plaintiff from bringing the action within the prescriptive delay.
Due to the defendant's wrongful conduct, until July 1973 the plaintiff was unable because of the tort-caused mental incompetency to know he had a cause of action or to have the mental ability to pursue it. We hold that, consequently, prescription did not begin to run against the plaintiff (under the facts stipulated for purpose of the exception pleading prescription) until July, 1973.
The fault or wrongful conduct of the defendant which prevents the plaintiff from suing timely is a traditional contra non valentem reason to except the plaintiff's claim from prescriptive extinguishment (see footnotes 7 and 11 above). We find this principle here applicable.
It is true that the usual case in which contra non valentem was applied on this ground has involved conduct of the defendant preventing the plaintiff's pursuit of his claimconduct separate from the wrongful conduct giving rise to the claim itself. We have not previously been confronted by a case in which the same wrongdoing *1324 that gave rise to the cause of action also made it impossible for the plaintiff to avail himself of his legal remedy because of the tort-caused mental incapacity. Nevertheless, we can discern no rational distinction which would justify us to apply contra non valentem in the former case, but not in the latter.
As Justice Provosty stated for this court in the Hyman v. Hibernia Bank & Trust, 139 La. 411, 417, 71 So. 598, 600 (1916), an "exception must be recognized, we think, in a case like the present, where the inability of the plaintiff to act was brought about by the practice of the defendant. Otherwise, the defendants would be profiting by their own wronga thing inadmissible in law."
To permit prescription to run under the present facts would permit a defendant with custody and control over a person he had tortiously injured to profit by his subsequent laxity in medical treatment, when (as here stipulated) the injured person's recovery of mental faculties was retarded beyond the prescriptive period. The plaintiff in these circumstances is doubly helpless to file suit by virtue both of his mental incapacity and also of his removal from the solicitous attention of relatives and friends who might act in his stead.

Decree
For the reasons assigned, we reverse the judgment of the court of appeal which sustained the defendants' exception of prescription; the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents for the reasons assigned.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., recused.
SUMMERS, Chief Justice (dissents and files a separate opinion).
James Corsey is a prisoner in the State Penitentiary at Angola. He instituted this action in tort against the State of Louisiana through the Department of Corrections; Murray Henderson, individually and in his capacity as Chief Warden of the penitentiary; Edgar C. Day in his capacity as Supervisor of Angola General Hospital; Odell Causey, inmate medical technician; a Mr. Dupre; and Dr. A. Castro.
While a prisoner at the penitentiary plaintiff Corsey alleges that, following a basketball game on June 18 or 19, 1972, he was stabbed several times in the back, neck, throat and arms. He was transported to the prison hospital immediately where he was treated for stab wounds by Odell Causey, a fellow inmate not licensed to practice medicine in Louisiana. No doctor attended Corsey's wounds at that time. After treatment Corsey was released from the hospital that afternoon to return to regular duty.
The next day Corsey was not allowed to return to the hospital; but, according to his allegations, he was ordered to go to work in the cotton fields or be placed in the "hole" (solitary confinement). Corsey chose to hoe cotton, but after hoeing half a row, he began to feel dizzy and passed out. As a result his temperature reached 107, and he remained unconscious for the next several days in the prison hospital.
Subsequently he was removed to the Earl K. Long Hospital in Baton Rouge where he was treated for "sunstroke". His record at that facility contained no notation of treatment for stab wounds, although the petition alleges there is no doubt that he was seriously injured from the stabbing.
According to the petition, Corsey did not begin to understand what had happened until July 1973. Until that time he could not speak, hear well, or make himself understood. For these reasons, it is alleged, prescription did not begin to run on this action until July 1973.
At the time of its filing, on November 26, 1976, Corsey's petition asserts that he was not then ambulatory and he was unable to talk properly, having suffered "some sort of apparent brain injury." Thus he has a speech impediment and faulty balance requiring confinement to a wheelchair.
*1325 The petition asserts that Corsey's condition is the result of faulty medical treatment and improper supervision by the prison officials for which he should be compensated in damages.
Defendants filed a peremptory exception of prescription to plaintiff's November 26, 1976 petition, based upon the allegation in the petition that he was stabbed in June of 1972 and the Louisiana Department of Corrections had failed to give him medical treatment for the wounds. On these allegations the exception sets forth plaintiff's suit was prescribed on its face, suit having been filed more than one year after the date of injury. La.Civil Code arts. 3536, 3537.
The trial judge maintained the defendant's exception of prescription and dismissed the suit at plaintiff's cost. On appeal to the First Circuit the judgment was affirmed on January 16, 1979. Certiorari was granted on application of plaintiff Corsey on February 23, 1979.
In the meantime, on March 27, 1974, a civil rights suit for damages was filed entitled Walter H. Brown v. State of Louisiana, No. 74-833 on the docket of the United States District Court for the Eastern District of Louisiana. This suit was filed as a class action on behalf of all inmates in need of medical treatment at Angola. On June 25, 1974, Corsey became a named party plaintiff in the Walter Brown suit by way of a supplemental and amending petition. Thereafter, Corsey and the other parties to the purported class action agreed with the defendants, Department of Corrections; Elayn Hunt, Individually and in her capacity as Head of the Department of Corrections; Murray Henderson, Individually and in his capacity as Chief Warden of the Louisiana State Penitentiary at Angola 1) that their suit would be voluntarily dismissed "without prejudice on the merits" as to any of them; and 2) that "the plaintiffs may refile their actions individually either in the State or Federal Courts, and the statute of limitations would be tolled for that purpose." It was further agreed that the Brown Case be denied the status of a class action. Acting on the basis of this agreement, on November 20, 1976 Corsey filed an individual suit in the Federal District Court for the Middle District of Louisiana asserting the same cause of action later asserted in this state court action filed on November 26, 1976. The understanding arrived at by the parties was later reduced to a written stipulation and approved by the court in an order of December 6, 1976. Corsey also dismissed his individual Federal Court action thereafter on December 9, 1976.
The Court of Appeal held that the effect of the stipulation in the federal court proceeding was to preserve only those claims which had not prescribed on March 27, 1974, at the time of the filing of the Brown suit. Thus if prescription against Corsey's claim did not begin to run until July 1973 it was still viable when the Brown suit was filed on March 27, 1974. Prescription would, therefore, be suspended during the pendency of the Brown suit and until its dismissal in December 1976. Corsey's suit filed in the state court on November 26, 1976 would therefore be timely. However, the Court of Appeal held that Corsey's cause of action had prescribed in June 1973 before the Brown action was filed. 366 So.2d 964. (La.App. 1st Cir. 1979).

I.
Corsey asserts that the plea of prescription in the instant case was tried on a stipulation of fact, which was inadvertently omitted from the record. It was error therefore for the Court of Appeal to hold there was no evidence of record to support plaintiff's claim that prescription was interrupted, suspended or waived. According to Corsey, the Court of Appeal should have remanded the case to the trial court to incorporate the stipulation of fact into the record and to require the trial judge to assign reason for his ruling on the plea of prescription which plaintiff had requested.
In brief to this Court Corsey represents that, in a conference with the trial judge, counsel for the parties stipulated, for purposes of the exception of prescription only, *1326 that the helpless condition of Corsey resulted from the gross negligence of defendants. At this conference it was also understood that defendants reserved their rights, if the exception were overruled, to introduce evidence as to the exact point at which Corsey regained his faculties sufficiently to cause prescription to run against his tort claim.
In addition, defendants have consistently taken the position in their memorandums and briefs to both the trial court and the appellate court that, for purposes of determining whether mental incompetence interrupts prescription, defendants would assume specifically and only that plaintiff was mentally incompetent from June 18, 1972 to July of 1973 and that the mental incompetence was a result of the injuries sued upon.
With this well understood and mutually agreed upon statement of fact, there is no necessity for a remand to incorporate the stipulation of fact entered into at the pretrial hearing on the peremptory exception and upon which the ruling of the trial judge was based. Under these circumstances we may assume for the purposes of the plea of prescription that plaintiff Corsey was in fact mentally incompetent from June 18, 1972 to July 1973 as a result of the injuries he received while in custody.

II.
The Court of Appeal held that the stipulation entered into in the Walter H. Brown Case in the Federal Court was not intended as a waiver of the prescription which may have accrued against plaintiff's claim prior to his intervention in that suit. This ruling was not assigned as error in Corsey's application to this Court for certiorari, and the question is not briefed here. It is therefore considered abandoned, leaving one question to be resolved at this stage of these proceedings: Does mental incompetence suspend prescription?
It is Corsey's position that when a defendant through negligence and willful and wanton conduct renders another disabled to such an extent that the injured person is unable to help himself, prescription is suspended until the helpless condition ends. In adopting this position plaintiff seeks to distinguish this case from the cases which have held that prescription does run against a plaintiff who is feeble-minded when the condition is unrelated to his claim; the distinction being that in the case at bar plaintiff's incompetencemental and physical was due to the fault of defendants.
It is a basic principle of Louisiana law announced in Article 3521 of the Civil Code that "[p]rescription runs against all persons, unless they are included in some exception established by law."
Article 3522 contains an exception to this rule, providing that "[m]inors and persons under interdiction cannot be prescribed against except in the cases provided by law." See also La.Civ.Code art. 3554.
In the decisions of this Court and the Courts of Appeal which have considered the exceptions created by Article 3522, it has been decided that mental incompetence alone is insufficient to qualify one as an interdict. Even commitment to an institution for the mentally incompetent does not supply the "interdiction" contemplated by Article 3522 which would suspend the running of prescription against one mentally incompetent. Interdiction must be pronounced in accordance with law.
In substance, the courts have held that this State must deal with a person alleged to be mentally incompetent or insane as a sane person, until the courts have interdicted him. The argument is that the law writer has advisedly used the word "interdict" in the technical sense of a judgment rendered contradictorily as distinguished from a person of unsound mind not formally interdicted. La.Code Civ.Pro. arts. 4541-4557.
The reasoning is said to be that where there has been a lawful interdiction, all persons are legally charged with knowledge of the incapacity; whereas, in cases of insanity or unsound mind not judicially declared, without the restrictions on civil rights imposed by interdiction, the validity of judicial proceedings, or, as in the case at *1327 bar, the timely assertion of rights by such an individual, would depend upon a determination of mental capacity in each case. Claims that physical incapacity or illness prevented the timely assertion of a person's rights have also been rejected. Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (1900); Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922); Ayres v. New York Life Insurance Company, 219 La. 945, 54 So.2d 409 (1951).
"Prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law." La.Civ.Code art. 3457. Because of the general proposition that prescription runs against all persons, prescription is not suspended unless the conditions prescribed by law for suspension are fulfilled. The requirement of interdiction to suspend the prescription running against a cause of action is such a condition in this case. It has not been fulfilled and prescription is not suspended.
Notwithstanding the clear command of Article 3521 of the Civil Code that prescription runs against all persons, and this Court's decisions to the effect that mental and physical incompetence are not exceptions to the rule of Article 3521, plaintiff urges the Court to create another exception. In order to reach this result it will be necessary for the Court to expand the scope of Article 3522 and to overrule this Court's cited decisions and a number of Court of Appeal cases on the question. To reach this result this Court would be compelled to adopt plaintiff's version of the doctrine that no prescription runs against one unable to bring an action. The principle is embodied in the maxim contra non valentem agere nulla currit praescriptio. This doctrine is applicable when the plaintiff establishes that: 1) the cause of action has not manifested itself with sufficient certainty to be susceptible of proof in a court of justice, or 2) the defendant concealed information or mislead and lulled the plaintiff into inaction.
While this doctrine has been recognized by this Court, it was observed by the Court in Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409 (1951), that "the doctrine `contra non valentem' has been received in Louisiana with some question and the Court's recognition of it was a cause for suspending the course of prescription has been quite restricted." The Court further pointed out that application of the doctrine had been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from obtaining knowledge of the existence of the debt. These cases were cited as authority: Arkansas Natural Gas Co. v. Sartor, 78 F.2d 924 (5th Cir. 1935); Bernstein v. Commercial Natl. Bank, 161 La. 38, 108 So. 117 (1926); Reardon v. Dickinson, 156 La. 556, 100 So. 715 (1924); Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714 (1921); Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916); Pope v. Employers Liability Assur. Corp., 14 So.2d 105 (La. App.1943); Cruze v. Life Ins. Co. of Virginia, 184 So. 735 (La.App.1938) and Succession of Kretzer, 170 So. 906 (La.App.1936). See also Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285 (1970).
There are obvious and well-recognized reasons for a high degree of certainty in the law of prescription. The passage of time dims the memory of witnesses, destroys evidence and imposes undue burdens upon litigants in their efforts to prepare their defense and reconstruct the facts as they existed in the distant past. When the legislature, in a tort case, fixes a one-year interval for filing suit it is because, in its wisdom, that is the time during which such a suit should be commenced. Courts should extend the time only in exceptional circumstances upon adequate authority.
In McClendon v. State Through Dept. of Corrections, 357 So.2d 1218 (La.App.1978), the court reviewed the Louisiana cases on "contra non valentem" and concluded that since 1916 the cases have stressed the need for some concealment or misleading action on the part of a defendant before a plaintiff could avail himself of the doctrine.
Applying these tests and recognizing the reluctance of the Court to depart from the *1328 clear and certain rules of the Civil Code, it must be concluded that the doctrine of "contra non valentem" does not apply here. The injury complained of by plaintiff was susceptible of proof on the day the stabbing occurred, it having been made manifest from the outset. Moreover, defendants did nothing to conceal, mislead or lull plaintiff into inaction.
I respectfully dissent.
MARCUS, Justice, dissenting.
This court has accepted in certain limited situations the common law doctrine contra non valentem agere non currit. This equitable doctrine has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other "ill practices") that tend to hinder, impede or prevent the plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing the suit is not willful or the result of his own negligence. Nathan v. Carter, 372 So.2d 560 (La.1979), and cases cited therein. In all previous cases, contra non valentem has been applied where defendant has prevented plaintiff's pursuit of his claim, I. e., has engaged in conduct separate from the wrongful conduct that gave rise to the claim itself. The majority opinion extends the doctrine beyond where separate conduct of defendant prevents plaintiff's pursuit of his action to where the tort itself made it impossible for plaintiff to avail himself of his legal remedy because of the tort-caused mental incapacity. I do not consider that the doctrine should be thus extended. Moreover, assuming the majority opinion is limited to instances where plaintiff is incarcerated in a penal institution, I do not believe that plaintiff's commission of a crime requiring imprisonment should accord him advantages over plaintiffs who abide by the law. Accordingly, I respectfully dissent.
NOTES
[1] The plaintiff had joined in a class action in federal court on June 25, 1974, which was dismissed in November, 1975, upon a stipulation that prescription had been tolled by the federal suit. His individual claim was filed timely thereafterwards, assuming it was not prescribed at the time he joined in the federal class action.
[2] The defendants stipulated, for purposes of determining this question of law with respect to prescription, that plaintiff was mentally incapacitated until July 1973, due to defendant's negligence. They have reserved the right to introduce evidence on the question of plaintiff's actual mental capacity during this time, should their exception of prescription be overruled.
[3] A factor in our decision, however, is that under the showing the plaintiff was in the custody of the defendant agency during the entire period prescription was suspended, so that no one else was aware of the plaintiff's cause of action or could assert it on his behalf.
[4] The cited Comment notes that, based on the Code article now found as Article 3521 of the 1870 Civil Code, this court overruled or ignored decisions recognizing the contra non valentem exception to prescription from 1867 until 1881, until these decisions were themselves overruled. See 12 Tul.L.Rev. at 250. The contra non valentem principle, although exceptional in nature, has been consistently recognized in Louisiana except during this interval.
[5] See, e. g., Quierry's Ex'r v. Faussier's Ex'rs, 4 Mart. (O.S.) 609 (1817).
[6] See, e. g., Orleans Parish School Board v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (1972); Dalton v. Plumbers and Steamfitters Local Union No. 60, 240 La. 246, 122 So.2d 88 (1960).
[7] See, e. g., Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916). Ultimately, we will rest our decisions on the last (above-italicized) reason for application of contra non valentem to the present factsthat prescription cannot run against a plaintiff who is prevented by the debtor's conduct from knowing of or acting upon his cause of action.
[8] The intermediate court accepted the defendant's argument that McClendon and Brown, above-cited (which did apply contra non valentem) and Dagenhart v. Roberston Truck Lines, Inc., 230 So.2d 916 (La.App. 1 Cir. 1970) (which did not) have held that the doctrine of contra non valentem does not apply unless (a) the cause of action has not manifested itself with sufficient certainty and (b) the defendant has concealed information or practiced deception lulling the plaintiff into inaction. We do not read these cases so restrictively: the language describes the usual factual situations in which this exception to prescription is applied; but it does not cite nor attempt to overrule decisions relating to other generic situations to which the doctrine has uniformly been held to be applicable.
[9] Our statutory law provides the same rule in certain explicit situations. For example, prescription runs in an action for damage to land, timber or property from "the date knowledge of such damage is received by the owner thereof." La.Civ.C. art. 3537. Medical malpractice actions must be brought within one year of "the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect." La.R.S. 9:5628. A disavowal of paternity suit "must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child;" La.Civ.C. art. 189 (1976).
[10] The Comment, cited above, at 12 Tul.L.Rev. 245 summarizes the French holdings: "[A] disability which is personal to the individual who is being prescribed against, such as feeblemindedness, prodigality, insanity which has not been established by interdiction, absence, or even ignorance of the cause of action, will not arrest the course of prescription. However, if the ignorance of the creditor or owner is due to the fault of the adverse party, the latter is not permitted to avail himself of the prescription which has run." (Italics ours.)
[11] If the plaintiff has been interdicted, however, he is not really invoking the jurisprudential exception, in being freed from the effects of prescription. Rather he is enjoying the protection of La.Civ.C. arts. 3522 and 3554 which provide that persons under interdiction cannot be prescribed against.
[12] This is the only case found in which a plaintiff made the claim that the plaintiff Corsey makes todaythat the defendant's negligently injurious behavior left him mentally incapacitated to bring suit. The court of appeal rejected the proposed application of contra non valentem, citing various cases in which (unlike the present) the plaintiff's mental incapacity was totally unrelated to the actions of the defendant. This decision was relied upon by the First Circuit in upholding the defendants' exception of prescription in the action before us. 366 So.2d 964, 966 (1978). The decision is overruled to the extent that it is inconsistent with the views we express today.