413 So.2d 600 (1982)
James Erwin "Red" BRAMBLETT
v.
Chapin E. WILSON.
J. R. "Jim" BRAMBLETT
v.
Chapin E. WILSON.
Nos. 14663, 14664.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
*601 Roy S. Lilley, Metairie, for plaintiffs-appellees James Erwin "Red" Bramblett and J. R. "Jim" Bramblett.
Steve Le Blanc, Baton Rouge, for defendant-appellant Chapin E. Wilson.
Before ELLIS, PONDER and SAVOIE, JJ.
ELLIS, Judge.
These two consolidated actions arise out of the same transaction. James Erwin "Red" Bramblett and his son, J. R. "Jim" Bramblett, were partners in a business dealing with welding equipment repair, and manifold repair and construction. On August 31, 1978, they entered into a contract by virtue of which they dissolved their partnership, each receiving one-half of the assets. They then sold an undivided 51 per cent interest in the said assets to Chapin E. Wilson, except for their interest in the property on which the business was located. Thereafter, a corporation, The Red Bramblett Co., Inc., was formed to operate the business, with Wilson owning 51% of the stock and the Brambletts the other 49%.
The sale to Wilson was made for $30,000.00. Wilson paid $3,750.00 cash to each of the Brambletts, and each received two promissory notes: one for $3,750.00, payable six months from date; and one for $7,500.00, payable five years from date, with interest to be paid annually.
The agreement contains this provision:
"The parties hereunto acknowledge said note shall be paid from Chapin E. Wilson's bonuses or shares of the profits of THE `RED' BRAMBLETT CO., INC. which shall be formed by the parties hereunto contemporaneous with the execution of this agreement."
Friction developed between Red Bramblett and Wilson, and, in early June, 1980, both of the Brambletts left the employ of The Red Bramblett Co., Inc. Red Bramblett testified that he was fired by Wilson. Jim Bramblett testified that he left The Red Bramblett Co., Inc. the day after "Mr. Wilson cancelled [his father's] contract and took him off the Board of Directors and invited me to take his place." Wilson testified that the Brambletts "walked out" on him.
After the above events, The Red Bramblett Co., Inc. was given notice to move from the property, and did so. The Brambletts then went into business for themselves at that site, doing what they had done before the sale to Wilson.
During the time that the Brambletts were employed by The Red Bramblett Co., Inc., Wilson received no bonuses or dividends from the company. He did, however, pay the two $3,750.00 notes when due, and the interest due in 1979 on the two $7,500.00 notes, out of his own or borrowed funds. When he failed to pay the interest due on the two $7,500.00 notes in 1980, these two suits were filed to collect the full amount thereof, under a provision in each note reading as follows:
"Any failure on the part of the maker or makers to pay any installment of this note, or the interest thereon, promptly when due, shall, ipso facto, and without any demand or putting in default, cause *602 this note and each and every installment thereof, to become immediately due and exigible."
Wilson answered, denying liability, alleging there was a failure of consideration; that the notes were to be paid only out of his share of profits and bonuses; and that there had been only losses since the plaintiffs left the company. He reconvened in each case for the $600.00 in interest paid on the $7,500.00 notes, and for $4,500.00 of the $7,500.00 already paid to each party.
After trial on the merits, judgment was rendered in favor of plaintiff in each case, and the reconventional demand was dismissed in each case. From the judgment, defendant has appealed suspensively.
In this court, defendant claims that the court below erred in not finding a failure of consideration; in failing to give defendant the benefit of the "clean hands" doctrine; in misconstruing the contract; in failing to consider the substantial losses of The Red Bramblett Co., Inc.; and in finding that Red Bramblett had been fired.
Relative to failure of consideration, Wilson testified that the Brambletts had an excellent reputation in their field, and that their service to The Red Bramblett Co., Inc. was the major consideration in his purchase of control of the company. It is his position that there was, therefore, a failure of consideration when the Brambletts left the employ of The Red Bramblett Co., Inc.
An employment contract for an indefinite period of time is terminable at the will of either party. Baynard v. Guardian Life Ins. Co., Etc., 399 So.2d 1200 (La. App. 1st Cir. 1981). There is no evidence in the record of any agreement on the part of plaintiffs to remain in the employment of The Red Bramblett Co., Inc. for any period of time. Mr. Wilson got what he paid for at the inception of the contract. It is unfortunate that he and Mr. Red Bramblett could not get along, but the termination of the employment contract, and its consequences, are eventualities against which Mr. Wilson could have protected himself by contract. Mr. Wilson's expectations, which he apparently communicated to no one, are not a legal basis for finding that the departure of the Brambletts constituted a failure of consideration for the promissory notes sued on. In the light of the foregoing, it is immaterial whether the Brambletts quit or were fired.
Mr. Wilson next complains that he should have been given the benefit of the "clean hands" doctrine, because plaintiffs left his company, set up competing companies, and solicited the business of the customers of The Red Bramblett Co., Inc. It is questionable that the so-called "clean hands" doctrine, an equitable common law theory, has any application in our civilian jurisdiction. See Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972). In any event, however, plaintiffs had every right to terminate their employment with The Red Bramblett Co., Inc., and were not restricted by a non-competition agreement from going into business for themselves. There is no basis for finding improper conduct on the part of the plaintiffs. The fact that The Red Bramblett Co., Inc. allegedly suffered substantial losses as a result is of no legal consequence.
Finally, defendant asserts that he cannot be made to pay the notes from any source other than bonuses or his share of the profits of The Red Bramblett Co., Inc., relying on the language allegedly to that effect in the agreement between the parties, which is hereinabove quoted. The trial judge found the provision to be ambiguous, because it did not say that the notes should be paid solely from Mr. Wilson's bonuses or share of the profits. He therefore heard parol testimony as to the intent of the provision. Red Bramblett testified that the provision was included so as to insure that any profits or bonuses accruing to Mr. Wilson would be used to pay off the notes, and not to limit the source of the payments, should there be no profits. The record reveals that Mr. Wilson drew no profits or bonuses from the corporation, but that he made payments on other notes, which he gave pursuant to the agreement, out of his own funds, and made a payment of interest *603 on the notes sued on herein from the same source. Under those circumstances, we think the trial judge correctly resolved this issue.
The judgment appealed from is therefore affirmed, at defendant's cost.
AFFIRMED.