**Arthur L. SCHULTHEISS**

v.

**MOBIL OIL EXPLORATION AND PRODUCING SOUTHEAST, INC.**

**Civ. No. 83–1946.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 10, 1984.

J.B. Jones, Jr., Jones, Jones & Alexander, Cameron, La., for plaintiff.

David R. Frohn and A.J. Gray, III, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, Lake Charles, La., Donald A. Hoffman, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, New Orleans, La., W. Dewitt Reams, Reams, Wood, Vollmer, Philips, Killion & Brooks, Mobile, Ala., for defendants.

VERON, District Judge.

### RULING

This matter comes before the court on the motion of the sole remaining defendant, Mobil Oil Exploration & Producing Southeast, Inc. ("Mobil"), for summary judgment in its favor dismissing the retaliatory discharge claim brought against it by Arthur L. Schultheiss. Mobil hired Schultheiss in November of 1979 to work as a dispatcher without specifying the duration of his employment and without putting the employment contract in writing. Schultheiss Deposition 11–13 ("Dep."). The plaintiff initially worked from a land-base in Cameron, Louisiana, but was transferred to the Mobile Bay, Alabama area in September of 1981. At Mobile Bay, he worked for a seven-and-one-half month period on a jack-up rig and upon an inland drilling barge. Dep. 22–26.

While on the offshore rigs, Schultheiss illegally pumped waste materials overboard under the directions of his supervisor and with the assurance that, if he got caught, "Somebody higher up at Mobil will help you out." Dep. 30–31. At one point a new drilling supervisor told him *not* to pump the waste overboard, but the supervisor countermanded this order after calling his supervisor. Dep. 65–66. The plaintiff was instructed to conceal the activity when a certain Mobil consultant visited one of the rigs. Dep. 68. The plaintiff knew that it was not proper to pump the wastes overboard. Dep. 32, 77–78.

In June of 1982, the plaintiff was transferred back to Cameron because the Alabama workload slacked off. Dep. 40. After the transfer, he was called to Mobil's New Orleans office several times for questioning. Dep. 41–42. At the first interview, he gave a statement to an investiga-

tor for Mobil's counsel, Mr. Reams. Dep. 42, 44. At a later session, he signed a form releasing the statement given to the Mobil investigator to the Alabama Attorney General's Office and was interviewed by a representative of that office. Dep. 51–55. Schultheiss does not feel that he told the Attorney General anything that Mobil did not want the Attorney General to know. Dep. 60. Mobil made no attempt to influence Schultheiss as to what he was to tell the Attorney General and indeed told all of the employees involved to "Go tell the truth." Dep. 53, 61. Mobil discharged Schultheiss at its New Orleans office on August 26, 1982, listing "misconduct" as the reason. Dep. 41–42, 50.

At the outset, there is a difficult question as to whether maritime, rather than Louisiana, law should control here. *Cf. Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir.1980) (standards for determining whether a maritime worker assigned to shore-based work remains a seaman). The court need not resolve this issue, however, because Schultheiss cannot establish a claim under either body of law. In *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981), Judge Rubin, writing for himself and Judges Randall and Tate, reviewed the retaliatory discharge action as it has developed across the country. He summarized this review with the following observation:

> Whether grounded in tort or contract, the cause of action is based on the notion that the employer's conduct in discharging the employee constitutes an abuse of the employer's absolute right to terminate the employment relationship *when the employer utilizes that right to contravene an established public policy.*

653 F.2d at 1062 (emphasis added). Thus, whether the claim arises in admiralty or under Louisiana law, it can survive the motion for summary judgment only if a genuine factual dispute exists as to whether Mobil discharged Schultheiss for a reason that contravened an established public policy.

The plaintiff first suggests that he was discharged "because ... Mobil was trying to cover up." Dep. 48. Discharging an employee to cover up illegal activity would probably be contrary to public policy in a manner that would give rise to a retaliatory discharge claim. Yet it is difficult to see how there can be any genuine issue of material fact as to whether Mobil discharged him for this reason. By the time Schultheiss was discharged, the "cat was already out of the bag." Moreover, everything in the record indicates that Mobil fully cooperated with the state investigation. They told their employees to "Go and tell the truth." There is simply nothing in the record to indicate that Mobil discharged the plaintiff to cover up the illegal activity that had already been fully revealed to the Attorney General with their cooperation.

The plaintiff next asserts that he was discharged as a scapegoat. Dep. 48. It may be morally reprehensible to retain culpable higher-level personnel while discharging only lower-level personnel involved in improper conduct, but to do so would not contravene an established public policy. In all of the jurisdictions recognizing the retaliatory discharge action, the supporting public policy has been grounded in a statute or jurisprudential doctrine.[1] The court is not aware of any statutorily or jurisprudentially established policy against "scapegoatism." Moreover, if there were such an established public policy, it would be best enforced not by protecting a person guilty of improper conduct, but by requiring an employer to impose sanctions against all of

---

**1.** *See Smith,* 653 F.2d at 1061–62. The *Smith* court noted that one decision did not so limit the claim. In *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), the court relied on "the new climate prevailing generally in the relationship of employer and employee," 316 A.2d at 551, and held that a discharge based on bad faith or mere personal malice was actionable. *Id.* But the New Hampshire Supreme Court narrowed the scope of *Monge* considerably in *Howard v. Dorr Wollen Co.,* 120 N.H. 295, 414 A.2d 1273 (1980). The *Howard* court con-

the culpable employees. Here, the deposition testimony indicates that the decision to dump the wastes did not go all the way up Mobil's chain of command. *See* Dep. 68. Mobil is surely entitled to discharge an employee who was directly engaged in an illegal activity with knowledge that his conduct was improper.

The plaintiff's final suggestion is that he was discharged "because of what [he] told the attorney general's office." Dep. 48. If Mobil discharged Schultheiss in retaliation for his not having lied to the Alabama Attorney General, then he would have a basis for a retaliatory discharge claim. The seminal wrongful discharge opinion, *Petermann v. International Bhd. of Teamsters Local 396,* 174 Cal.App.2d 124, 344 P.2d 25 (1959), dealt with just such a situation. The employee in *Petermann* was discharged for refusing to give perjured testimony before a legislative committee.[2]

Yet there is no *genuine* issue of fact as to whether Mobil discharged Schultheiss in retaliation for his testimony. In his deposition, Schultheiss explained that he believed his remarks to the Attorney General led to his discharge "[m]ainly because if I probably would have just denied everything, *and everybody else that was in Mobile denied knowing anything about discharges overboard,* maybe we probably wouldn't have got fired, just covered the whole thing up." Dep. 60 (emphasis added). From this testimony, it appears that Schultheiss believes that Mobil would not have discharged the employees if, *on their own initiative,* and, *contrary to Mobil's express instructions,* they had lied and covered up the incident. That is, Schultheiss and the other employees would not have been fired if they had not been caught. Schultheiss further testified that Mobil made no attempt to encourage him to lie to the Alabama Attorney General. Dep. 53. Indeed, Mobil told the employees involved to "Go tell the truth." Dep. 61. The plaintiff's own testimony therefore indicates that he is not an employee who was fired after he blew the whistle, but rather is one who was caught after the whistle had already been blown. He has no claim for retaliatory discharge on these facts.

Accordingly, the motion of the defendant, Mobil Oil Exploration & Producing Southeast, Inc., for summary judgment in its favor is GRANTED and the claim of plaintiff, Arthur L. Schultheiss will be DISMISSED.

---

strued *Monge* to apply only where the discharge violated public policy and cited representative decisions from other jurisdictions. Thus, New Hampshire law should now be in accord with the statement in the text.

**2.** *Petermann* was cited with apparent approval in *Smith* and in a Louisiana appellate retaliatory discharge decision. *See Smith,* 653 F.2d at 1061 n. 9; *Wiley v. Miss. Pac. R. Co.,* 430 So.2d 1016, 1019 n. 7 (La.App. 3d Cir.1982). *Wiley* involved a claim under a statute expressly prohibiting discharge in retaliation for asserting a workmen's compensation claim. A basis for a more general retaliatory discharge action in Louisiana might be found in Article 1901 of the Louisiana Civil Code, which directs that all agreements "must be performed in good faith." *Compare Gil v. Metal Service Corp.,* 412 So.2d 706 (La.App. 4th Cir.1982) (the panel dismissed a retaliatory discharge claim because it found no statutory basis for such a claim) *with Wiley,* 430 So.2d at 1020–21 (the court noted that some courts have treated retaliatory discharge as a breach of an implied contractual duty to perform in good faith) *and* Note, *Retaliatory Discharge of Seaman: Smith v. Atlas Off-Shore Boat Service, Inc.,* 43 La.L.Rev. 221, 231–35 (1982) (the student writer discusses the duty of good faith performance as a basis for a retaliatory discharge claim and, in note 83, points out that the *Gil* court overlooked Civil Code Article 1901 in its search for legislative authority).