George **FRICHTER**

v.

**NATIONAL LIFE & ACCIDENT INSURANCE CO., et al.**

Civ. A. No. 83–0665.

United States District Court, E.D. Louisiana.

Sept. 17, 1985.

George N. Bischof, Jr., Chalmette, La., for plaintiff, George Frichter.

Howard Shapiro, Robert K. McCalla, McCalla, Thompson, Pyburn & Ridley, New Orleans, La., for defendant, National Life & Acc. Ins. Co.

ROBERT F. COLLINS, District Judge.

This matter came before the Court on July 31, 1985 on motion of counsel for defendants, National Life & Accident Insurance Company and William O. Horne, seeking summary judgment pursuant to Rules 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure on the grounds that plaintiff's complaint fails to state a claim upon which relief can be granted; and further that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law.

Wherefore, after a careful consideration of the arguments of counsel, the submitted memoranda, the relevant facts and the applicable law, this Court will GRANT defendants' motion for summary judgment.

## REASONS

The instant matter arises out of an action brought by George Frichter against National Life & Accident Insurance Company (hereinafter "National") and William O. Horne for damages arising out of the alleged wrongful termination of plaintiff in December 1981. Plaintiff filed the instant petition on January 17, 1983. The case was removed by defendant National to this Court on grounds of diversity jurisdiction.

The affidavits and deposition testimony show that plaintiff was employed by defendant National in various capacities including manager from 1959 until he was allegedly terminated in December of 1981.

Under the employment relationship that existed, plaintiff did not have a contract of employment for a fixed period of time. The evidence shows, however, that plaintiff was compensated pursuant to a District Manager's Compensation Agreement which also did not set forth a fixed period of employment. The agreement provided in part for termination "by action of myself [plaintiff] or of the company, with or without cause ..." More specifically, this simply meant that plaintiff's employment was terminable at will by plaintiff or his employer.

Plaintiff has also filed suit against William O. Horne, a regional manager of defendant National, who at the time of the alleged termination was plaintiff's supervisor. Plaintiff contends that Horne tortiously interfered with his employment relationship by firing him.[1] For purposes of deciding this motion for summary judgment, the Court must carefully analyze the allegations of plaintiff's complaint.

Plaintiff's allegations can be broken into three component parts: (1) wrongful termination allegations; (2) compensation allegations; and (3) plaintiff's allegations concerning Horne's interference with his employment relationship. The Court will discuss each in turn.

### Wrongful Termination Allegations

In Paragraph II of the Complaint, plaintiff alleges that he was wrongfully terminated. Plaintiff further states wrongful termination claims in Paragraph V, wherein he alleges that he was forced to violate state law under threat of termination of his employment. Paragraph VI of the Complaint includes a demand for damages for "mental anguish, pain and suffering."[2]

### Compensation Allegations

In Paragraphs III and IV of the Complaint, plaintiff challenges the structure of his compensation package, and complains of certain company procedures. Fairly read, these allegations indicate plaintiff disapproved of National's procedures for calculating commissions. These allegations also demonstrate plaintiff's disagreement with National's alleged practice of requiring sales agents to make repeated call backs on clients having expired or cancelled policies.

---

**1.** Plaintiff contends that his termination was motivated by a personal conflict with Mr. Horne and/or his ethical objections to the use of a new accounting system.

**2.** Damages for mental anguish, pain and suffering exist apparently only under the theory that plaintiff's discharge was in some way tortious.

### Allegations Concerning Horne's Interference With Plaintiff's Employment Relationship

In Paragraphs IX–XI of the Complaint, as amended, plaintiff alleges that Horne engaged in activities causing plaintiff to be wrongfully terminated. In effect, plaintiff alleges that Horne tortiously interfered with plaintiff's employment relationship with National. These claims against Horne are analogous to claims of tortious interference with an alleged contract or tortious inducement to breach an alleged contract and will be discussed later. First, however, the Court will discuss each component of plaintiff's allegations separately.

#### 1. *Wrongful Termination Allegations*

With regard to his allegations concerning wrongful termination, the deposition testimony of plaintiff confirms that he did not have an employment contract with National for a fixed period of time. In his deposition, plaintiff answered:

"... the contracts I signed had no expiration date on them.

Q. Did the contracts that you previously signed guarantee you employment?

A. No sir."

*See* Exhibit D–3, Plaintiff's Deposition at p. 22.

▮ The record reflects that the contracts plaintiff alludes to are not contracts of employment; they are merely compensation agreements. On December 3, 1981, plaintiff executed a District Manager's Compensation Agreement. The compensation agreement, erroneously referred to in deposition testimony as a contract of employment for a fixed period, is the only signed document controlling plaintiff's conditions of employment. The compensation agreement does not contain a promise of employment for a fixed term.[3] Moreover,

---

**3.** In 1977, plaintiff executed a similar District Manager's Compensation Agreement. The 1977 compensation agreement made no promise of employment for a fixed term. That document also stated termination of the compensation agreement could occur "by action of myself [George M. Frichter] or of the Company, *with or*

the compensation agreement specifically provides:

> In consideration of the payment by the Company to me of Level Pay and subsequent total compensation referred to above, I agree that upon the termination of this Agreement, which may be by reason of my death, or by action of myself or of the Company, *with or without cause,* the Company's liability to me under this agreement shall end with the payment to me of such compensation for the last week during which I shall actively pursue my duties as District Manager; and further, that any amounts accumulated on my behalf during my service as District Manager shall be divested from me upon my termination date, unless specifically stated otherwise in writing by the Company; and further, that *any and all parts of my compensation basis are subject to modification by the Company* following notice thereof to me. I understand and agree that any and all prior compensation agreements between the Company and me are hereby terminated.

The Court can find no language within the agreement which states that plaintiff is hired for a definite period. It was this same compensation agreement that plaintiff executed on two separate occasions: April 11, 1977 and December 3, 1981. The agreements further provided the basis for compensation was subject to modification by the company. Although plaintiff argues otherwise, there is no question that the compensation agreement does not constitute a contract of employment. Thus, National could fire plaintiff at any time, without cause. What remains at this point is for the Court to apply the law governing this compensation agreement.

█ Because a federal court exercising diversity of citizenship jurisdiction is bound to apply the substantive law of the state, Louisiana law is applicable to the case sub judice. Thus, under Louisiana law, for an employment contract to exist, there must be a promise of employment for a fixed term. *Aldahir v. Mobil Oil Exploration and Producing Southeast, Inc.,* 420 So.2d 714 (La.App. 4th Cir.), *cert. denied,* 423 So.2d 1147 (La.1982). Absent a contract for a fixed period of time, an employee is terminable at will, at any time, for any cause, or for no cause. *See* La.Civ.Code Art. 2747; *Pechon v. National Corp. Service, Inc.,* 234 La. 397, 100 So.2d 213, 216 (1958) (Court noted, "It is not necessary for us even to discuss the causes given for plaintiff's discharge, for under the law and facts of this case, his services could be terminated at the will of his employer."); *Jackson v. East Baton Rouge Parish School Board,* 393 So.2d 243, 245 (La.App. 1st Cir.1980) (Court held that "[E]mployees hired without a fixed term are subject to dismissal by their employer at any time, for any reason, and the employer does not incur liability for the discharge.... Therefore, there is no 'wrongful discharge' when an employee hired without a fixed term is fired."); *see also Hoover v. Livingston Bank,* 451 So.2d 3, 4–5 (La.App. 1st Cir. 1982); *Bramblett v. Wilson,* 413 So.2d 600, 602 (La.App. 1st Cir.1982); *Griffith v. Sollay Foundation Drilling, Inc.,* 373 So.2d 979, 981 (La.App. 3d Cir.1979); *Freeman v. Elbilco, Inc.,* 338 So.2d 967 (La.App. 4th Cir.1976). The material facts undeniably demonstrate that plaintiff had no contract of employment for a fixed term. Therefore, plaintiff was an at-will employee who could be terminated by National with or without cause. LSA–C.C. art. 2747.

Moreover, the only agreements executed by plaintiff and National were District Manager's Compensation Agreements. (*See* Exhibits D–1, D–2). Under Louisiana jurisprudence, such compensation agreements cannot be construed as contracts of employment for a fixed period. *See Weaver v. Purple Shield Life Insurance Company,* 356 So.2d 519, 521 (La.App. 1st Cir. 1977) (letter specifying salary from September 15, 1971 through December 31, 1972 did not guarantee employment for a fixed period of time; plaintiff terminable at will of employer); *Baynard v. Guardian*

*without cause ..." (See* Defendants' Exhibit D–2)

*Life Insurance Company of America,* 399 So.2d 1200, 1203 (La.App. 1st Cir.1981) (district agent's contract terminable by either party with notice to other party; rejecting claim of contract for life, court holds contract for life and contract for an indefinite period are terminable at the will of either party at any time.)

■ In the instant matter, even assuming arguendo that the District Manager's Compensation Agreement could possibly be construed as an employment contract for a definite term, the terms of the agreement clearly demonstrate that either National or plaintiff could terminate the agreement at any time, with or without cause. Thus, the rationale, as set forth in the above precedents, still controls and plaintiff does not state a claim for wrongful discharge.

■ In Paragraph V of the Complaint, plaintiff alleges defendant forced him to violate state law under threat of termination of employment. Even this allegation is insufficient to state a claim under Louisiana's employment-at-will doctrine. In *Gil v. Metal Service Corp.,* 412 So.2d 706 (La.App. 4th Cir.), *cert. denied,* 414 So.2d 379 (La.1982), plaintiff claimed he was wrongfully discharged for refusal to perform an illegal act. Describing plaintiff's claim as *res nova* in Louisiana, the Court held that an employer could terminate an at-will employee even for refusal to perform an illegal act.[4] The *Gil* court asked:

> *Is the refusal to perform an illegal act constitutionally or statutorily protected from the exercise of arbitrary discretion of an employer's right to terminate employees?* We can find no authority to indicate the U.S. Constitution,

an Act of Congress, or the Constitution of the State of Louisiana limits the right of an employer to terminate employees who refuse to perform acts they believe to be illegal. As to Louisiana statutory prohibitions, Art. 11 is general, prohibiting agreements to breach laws made for the preservation of public order or good morals. These contracts, otherwise mutually binding, cannot be enforced. There is no agreement between [plaintiff] and [defendant] to abrogate any law. The article is inapplicable.

*Id.* at 708.[5] In dismissing the claim for wrongful termination, the court went on to note that:

> "Broad policy considerations creating exceptions to employment at will and affecting relations between employer and employee should not be considered by this court."

*Id.*

Plaintiff argues that the Court should disregard all of the above cited precedent concerning at-will employment agreements and allow a cause of action under certain circumstances. Along these lines, plaintiff reminds the Court that Louisiana Civil Code articles concerning conventional obligations were revised by Acts 1984, No. 331 (approved July 2, 1984, effective January 1, 1985), and reenacted as Civil Code Articles 1756–2057. It is from these articles that plaintiff urges that the Louisiana legislature intended to allow a cause of action for wrongful discharge from employment under certain circumstances even where there is not a fixed term of employment. Specifically, plaintiff cites Civil Code Article 2024 and the legislative comments which provide:

---

4. The *Gil* court was careful to note that there are recognized limitations on the discretion of employers. The Court noted:
    "An employee cannot be terminated because of race, sex or religious beliefs, or because he or she exercised constitutionally protected rights, such as free speech. Various statutes have given rights to employees, and employers have been prohibited from terminating employees because they have exercised these rights, such as the right to organize, and in

> Louisiana, the right to present worker's compensation claims."
> *Id.* at 708.

5. Compare *Gil* with *Wiley v. Miss. Pac. R. Co.,* 430 So.2d 1016, 1021 (La.App. 3d Cir.1982) (the court noted that some courts have treated retaliatory discharge as a breach of an implied contractual duty to perform in good faith; *see also Schultheiss v. Mobil Oil Exploration,* 592 F.Supp. 628 (W.D.La.1984).

"A contract of unspecified duration may be terminated at the *will* of either party by giving notice, reasonable in time and form, to the other party." (emphasis added).

This Article is new. It does not change the law, however. Under the Article, a contract of employment for an indefinite duration may be terminated at the will of either party. The Louisiana State Law Institute legislative comment subsection (e) states that, "In proceedings under this Article, the parties must comply with the overriding duty of good faith." Plaintiff requests that this Court disregard all previously cited precedent and allow a cause of action for wrongful discharge under the circumstances of the case because, as he alleges, defendants did not act in good faith in firing him.

■ As this Court has stated earlier, an employment contract for an indefinite period of time is terminable at the will of either party. *Baynard v. Guardian Life Ins. Co., etc.*, 399 So.2d 1200 (La.App. 1st Cir. 1981). Here, there is no evidence in the record of any agreement on the part of plaintiff to remain in the employment of National for a fixed period of time. Mr. Frichter "got what he paid for" when he signed the compensation agreement. It is unfortunate that he and National could not get along, but the termination of the employment contract and its consequences are eventualities against which Mr. Frichter could possibly have contracted for at the time of signing the compensation agreement. Mr. Frichter's expectations in and of themselves are not a legal basis for maintaining a cause of action for wrongful discharge in an at-will employment situation. Nor does the duty to perform the at-will contract in good faith create in and of itself an expectation of employment security. Enforcing good faith in the at-will compensation agreement herein cannot be used to significantly alter the agreement. It is therefore axiomatic that good faith cannot be used to create permanent job security when it was not contemplated by the parties. There is no evidence in the record to suggest that plaintiff had a fixed term of employment up until the time he chose to retire as suggested by his counsel. Louisiana law is clear. Plaintiff did not have an employment contract with defendant for a definite period of time. Therefore, defendant was free to discharge him at any time without cause. *Hoover v. Livingston Bank*, 451 So.2d at 5.

## 2. *Compensation Allegations*

■ Concerning plaintiff's compensation allegations, plaintiff claims National changed its business procedures and methods for calculating commissions. For the reasons just stated above, these claims must be dismissed with prejudice. They must also be dismissed because the compensation agreement gave National discretion to modify the terms of plaintiff's compensation. The agreement clearly states "[A]ny and all parts of my [plaintiff's] compensation basis are subject to modification by the company following notice thereof to me." As plaintiff states in deposition testimony, the terms of this compensation agreement and prior agreements could be changed from time to time at the discretion of National. Thus, the undisputable facts demonstrate that through its compensation agreements with plaintiff, National had the right to modify plaintiff's compensation and the procedures to determine compensation. Plaintiff's testimony indicates he understood this. Accordingly, the claims plaintiff asserts in Paragraphs III and IV must be dismissed.

## 3. *Plaintiff's Tort Allegations*

In Paragraphs IX–XII of his Complaint, plaintiff alleges that defendant William O. Horne tortiously interfered with his employment relationship. These allegations must be dismissed for two reasons which follow.

■ First, under Louisiana law, no cause of action exists for tortious interference with a contract or for inducing another to break a contract. *See D'Antoni v. D'Antoni*, 432 So.2d 926 (La.App. 4th Cir.1983); *Moss v. Guarisco*, 409 So.2d 323 (La.App.

1st Cir.1981), *cert. denied*, 412 So.2d 540 (La.1982), and 462 So.2d 1247 (La.1985). (Court indicated that Louisiana is the only state which does not recognize cause of action for tortious interference with contract and deferred to prior Louisiana precedent finding no cause of action.) In *Linzay v. Tangipahoa Parish Farm Bureau*, 387 So.2d 1343, 1347–48 (La.App. 1st Cir.), *cert. denied*, 393 So.2d 748 (La.1980), the court affirmed the dismissal of a claim brought by an insurance agent alleging a third party took steps leading his employer to terminate him. Linzay's agreement with his employer permitted termination by either party by giving 10 days written notice. Linzay alleged a third party convinced his employer to terminate the employment relationship. The facts of *Linzay* are analogous to the case sub judice. In the instant case, the third party alleged to have interfered with the employment relationship is plaintiff's supervisor, Horne. The *Linzay* court held no cause of action existed for tortiously inducing a breach of a contract of employment. Finding Linzay was an at-will employee, the court concluded:

> Furthermore, the employment contracts between insurance Companies and Linzay were terminable at-will by either party upon notice. To discharge Linzay was not a breach of contract, as there existed no provision in Linzay's contracts of employment that prevented his discharge at any time. Indeed, the contracts were quite to the contrary. There having been no provision of the employment contracts providing that Linzay could not be discharged at-will upon notice, there can have been no wrongful inducement to breach the employment contracts on the part of Farm Bureau.

*Linzay v. Tangipahoa Parish Farm Bureau*, 387 So.2d 1343, 1347–48 (La.App. 1st Cir.), *cert. denied*, 393 So.2d 748 (La.1980). The holding of the *Linzay* case is directly applicable to the instant case. The juris-

prudence is quite clear: Louisiana does not recognize a cause of action for tortious interference with contract.

Secondly, plaintiff's wrongful discharge tort claim must be dismissed because it has prescribed. Under Article 3536 of the Louisiana Civil Code, the prescriptive period for this type of action is one year. Louisiana Civil Code Article 3537 provides for a prescription period which runs from the date on which the damage is sustained. Under Louisiana law, damage is sustained when "it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice." See *Coates v. Fireboard Corporation, et al.*, 583 F.Supp. 504 (M.D.La.1984) citing *Jones v. Texas & P. Ry. Co.*, 125 La. 542, 51 So. 582, 583 (1910); *Vanguard Underwriters Ins. Co. v. Ray's Plumbing Co., Inc.*, 312 So.2d 111, 112 (La.App. 1st Cir.1975).

Early Louisiana jurisprudence recognized a limited exception where in fact and for great cause a plaintiff was unable to exercise his cause of action when it accrues. *Chaney v. State*, 432 So.2d 256 (La.1983); *Corsey v. State*, 375 So.2d 1319 (La.1979). The exception consisted of three categories of situations in which early jurisprudence applied to the principle of *contra non valentem* [6] so as to prevent the running of liberative prescription:

> "(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action."

See *Corsey v. State Dept. of Corrections*, 375 So.2d 1319, 1321 (La.1979). In *Corsey*, the Louisiana Supreme Court notes that modern jurisprudence recognizes a fourth

---

**6.** The word is taken from the maxim *contra non valemtem agere nulla currit praescriptio* which denotes the principle that prescription does not run against a party who is unable to act. *See,*

*Corsey v. State Dept. of Corrections*, 375 So.2d 1319 (La.1979); *see also* Comment, The Scope of the Maxim Contra Non Veletem in Louisiana, 12 Tul.L.Rev. 244 (1938).

type of situation where *contra non valentem* applies so that prescription does not run:

"Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. *Cartwright v. Chrysler Corporation*, 255 La. 597, 598, 232 So.2d 285 (1970); *Sumerall v. St. Paul Fire & Marine Ins. Co.*, 366 So.2d 213 (La.App. 2nd Cir.1978)."

375 So.2d at 1322. It is this category which is relevant to the matter before the Court. It is plaintiff's position that "damage is sustained when it has manifested itself sufficiently to be susceptible to proof in a court of justice." [7] Plaintiff correctly cites *Coates v. Fiberboard Corp.*, 583 F.Supp. 504 (M.D.La.1984) for that authority.[8] However, he has misinterpreted Judge Polozola's Opinion in *Coates*. *Coates* clearly states: "Where the plaintiff has knowledge of his injuries, but is not aware of the full measure of damages occasioned, prescription runs against the plaintiff from the date he has knowledge of his injuries." 583 F.Supp. at 506.

Thus, what remains for this Court to determine is whether the plaintiff, George Frichter, "had sufficient knowledge to put him on notice, or sufficient knowledge to generate inquiry, such that he is deemed to know that he could by reasonable diligence have learned." 583 F.Supp. at 506.

■ In support of their motion for summary judgment, defendants have filed Exhibits D–4, D–5, and D–6. These exhibits are deposition testimony of both plaintiff and defendant Horne. In his deposition, plaintiff states that he was verbally terminated by Horne on December 3, 1981.[9]

Q. In your petition you claim that on January 15, 1982 your employment was terminated wrongfully. Did National Life terminate you?

A. I was verbally terminated on December 3.

Subsequently in his deposition, Exhibit D–5, plaintiff testifies that he was fired in December of 1981, but remained on the payroll until January 15, 1982.

Q. Mr. Frichter, you take the position then that you were fired by Mr. Horne, is that correct?

A. That is correct.

Q. In December, right?

A. Yes.

Q. Why do you allege in your petition the day of January 15 of 1982 as your termination?

A. Well, I returned to work the following Monday fully expecting to find Mr. Horne at the office and he was not there. So I just continued to come to work. Finally, several days before Christmas, Mr. Horne came to town and I asked him, I said, would it be all right if I worked until January 15. He said, fine. So that is when I left National Union.

The deposition testimony is clearly uncontradicted; plaintiff knew he would be separated from National's employ no later than December 31, 1981. The instant litigation was filed over one year later on January 17, 1983. The alleged actionable tort is plaintiff's separation from National's work force. The consequences or damages of this alleged tort are plaintiff's loss of his position and loss of remuneration. These

7. Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 15.

8. Plaintiff suggests that "actual" damage must be sustained before prescription begins to run and cites La.C.C. Art. 3492 as authority. The word "actual" is not used in that article and has no meaning here.

9. Defendant Horne testified that in a meeting with plaintiff, plaintiff refused to give a written resignation but preferred a verbal resignation instead. See Exhibit D–6, Horne's Deposition, pp. 74–75. Later in his deposition, defendant Horne testified that this meeting with plaintiff occurred at the end of December.

damages were known to plaintiff by December 31, 1981, the latest date he knew of his separation from National's employ. It is not necessary that plaintiff be aware of the full extent of his damages before suit is brought. *Yarbrough v. La. Cement Co., Inc.*, 370 So.2d 602 (La.App. 4th Cir.1979). Accordingly, the Court finds as a matter of fact and law that plaintiff's tort cause of action has prescribed.

For all of the foregoing reasons, the Court will DISMISS plaintiff's complaint with prejudice.