100 So.2d 213

Ernest E. PECHON

v.

NATIONAL CORPORATION SERVICE,
Inc., and Forrest C. Pendleton.

No. 43351.

Feb. 10, 1958.

Byrnes & Wallace, New Orleans, for appellant.

Hammett & Bertel, New Orleans, for defendants-appellees.

HAWTHORNE, Justice.

Plaintiff Ernest E. Pechon alleged in his petition, among other things, that the defendant Forrest C. Pendleton, individually and for the defendant National Corporation Service, Inc., induced plaintiff to terminate his services as an agent with the Federal Bureau of Investigation and to enter into a contract of employment with the defendant corporation, and that his employment with the corporation was illegally and wrongfully terminated as of February 1, 1954. Plaintiff prayed that " * * * there be judgment herein in favor of petitioner, Ernest E. Pechon, ordering the said defendants to specifically perform the said contract in that twenty-five per cent of the outstanding stock of the said corporation be sold unto petitioner in accordance with the terms of the said contract and that petitioner be restored to his position with full salary, plus expenses and transportation, and that that there be further judgment in favor of petitioner for all sums and salary lost up to the date of reinstatement, less any amount that petitioner may earn in other endeavors pending the trial and decision in this case, or, in the alternative, and only in the alternative, if the Court should find that petitioner is not entitled to the relief hereinabove prayed for, then that there be judgment in favor of petitioner, Ernest E. Pechon, in the sum of $7,200 per year for five years from May 19, 1953, less any amount heretofore paid petitioner, and for further damages commensurate with dividends on one-fourth of the stock of said corporation for as long as petitioner shall hold said stock".

Defendants filed answer, and after trial on the merits plaintiff's suit was dismissed at his costs. He has appealed.

■ First, we do not think that the evidence in this case sustains plaintiff's con-

tention that defendant Pendleton individually and for the defendant corporation induced plaintiff to terminate his services with the Federal Bureau of Investigation and become associated with the corporation. Plaintiff at the time of his employment by the corporation had been living in Philadelphia, and during a visit to New Orleans negotiations were begun between him and Pendleton with regard to his employment by the corporation. Plaintiff obtained the services of an attorney, Mr. Flettrich, who in due course drafted a contract setting forth the proposed terms of this employment. This proposed contract stipulated employment for a period of three years at an annual salary of $7,200 payable semi-monthly, and, among other things, granted the right and privilege to plaintiff to acquire 25 per cent of the outstanding capital stock of the National Corporation Service, Inc., of Louisiana at its book value at the date of purchase, and reimbursement of the actual expenses incurred in transporting plaintiff, his wife, and personal effects from Philadelphia to New Orleans.

This contract in due course was submitted to Mr. Pendleton, who informed plaintiff's attorney in a letter dated February 27, 1953, that he had carefully read the contract, and that it did not reflect the oral understanding between him and Mr. Pechon. Mr. Pendleton sent a carbon copy of this letter to plaintiff. The attorney wrote

Mr. Pechon on March 2, 1953, informing him that Mr. Pendleton objected to several provisions of the contract, particularly to the provision regarding the sale of a percentage of the corporation's stock.

Considerable correspondence passed between Pechon and Pendleton. However, on March 2, 1953, plaintiff drafted to Pendleton a letter in which, among other things, he stated:

"I care particularly about four points which should make up our initial employment agreement. These four points are fundamental. They actually make up part of any employer-employee agreement whether F.B.I., insurance, salesmen or the like.

"These aspects are:

"1. Salary ($7200.—per year)

"2. Reasonable expenses incurred by me on company business are to be reimbursed following the submittance of voucher itemizing expenditures.

"3. Company automobile at company expense should be provided for use in contact or call work and other sundry company business.

"4. Expenses incurred by me in moving self, wife and personal effects from Philadelphia to New Orleans should be reimbursed by you.

"It is my feeling and understanding that other items mentioned in employ-

ment contract submitted to you by Al Flettrich are to be *only voluntary measures,* on your part, made available to me, at your discretion, depending on and at the time you are satisfied with my performance. This feeling of satisfaction of course can only be fostered and attained by satisfactory service over a period of time." (Italics ours.)

Under date of March 24, 1953, Pendleton wrote to plaintiff as follows:

" * * * I am glad we have gotten together on all four points set out in your letter of March 2, 1953.

"1.—To pay you a salary of $7,200 per year.

"2.—Reasonable expenses incurred by you on company business, to be paid back on submitting voucher.

"3.—Furnish automobile at company expense for use in contact or soliciting business, and other sundry activities for benefit of company.

"4.—Reimburse you for cost of moving to New Orleans in the amount of $868.44 specified in your letter of March 8, 1953.

"I agree to the four points of your proposal set out above. I am sure this is as legal as any attorney can bind us, and submit that this is sufficient. If you want Al Flettrich to draw up a contract embodying the

above, I have no objection, however, I am sure it isn't necessary."

Plaintiff acknowledged the receipt of this letter, stating that he was very happy that agreement had been reached on all points of his employment contract. In due course he came to New Orleans and entered the employ of the defendant corporation.

At about the time plaintiff entered the employment of the defendant corporation, he requested of Pendleton, president of the corporation, who was leaving on a long trip, a letter as evidence of his intentions, and pursuant to plaintiff's request Pendleton wrote the following letter:

"It is gratifying to me that you have given up your very high and responsible post in the F.B.I. to associate with me in my organization. While no legal contract exists, the confidence we have in each other binds us together and assures the fullest consideration of our mutual interests and, while we both live there seems no need of any written contract between us. However, life is uncertain and in the event of my death you have nothing to protect your interest other than my letters which, in a vague way, indicate my intentions. For this reason, I want you to have in your possession, evidence of what my intentions are and, should I die before these intentions are fully carried out, then the provisions I

set out below, shall become effective immediately.

"You are to continue to receive the salary you now are receiving. All expenses incurred by you in connection with your duties are to be borne by the Company. You are to be furnished tranportation to facilitate you in your work, and in the event you elect to use your own automobile for this purpose, you will receive compensation in an amount agreed on for use of your car. You will be given the opportunity to purchase up to twenty-five percent of the stock of National Corporation Service, Inc. at its book value, and this stock may be paid for from the dividends of same. You will be appointed to the Board of Directors, and made Executive Vice-President of the National Corporation Service, Inc. at the December 1953 meeting of the Board. All of the above to be put into effect on January 1, 1954."

It is the contention of plaintiff that this letter is the contract between the parties under which he is entitled to the relief sought in his petition.

■ In determining what the actual agreement was between the parties, we think it is necessary to consider all the letters we have quoted above, and not just the last letter alone.

There seems to be no dispute between the parties that there existed a contract of employment between them under which plaintiff would receive a salary of $7200,[1] be paid reasonable expenses while engaged in company business, have the use of an automobile at company expense while performing company business and be reimbursed for the cost of moving to New Orleans.

■ Plaintiff testified that the contract of employment was for life. Even if it were, however, the contract would avail him nothing for an employment contract for life is prohibited under our law. See Arts. 167, 2746, La.Civ.Code; Page v. New Orleans Public Service, Inc., 184 La. 617, 618, 167 So. 99. As we view the matter, the contract was for an indefinite period of time; in other words, there was no definite or fixed period of employment. It is well settled that in such a case the employment must be considered as being at the will of either party. United Credit Co. v. Croswell Co., 219 La. 993, 54 So.2d 425; Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760; Russell v. White Oil Corporation, 162 La. 9, 110 So. 70.

Plaintiff's services, according to Pendleton's testimony, were unsatisfactory, and he was discharged for cause on January 24, 1954, effective February 1 of that year. It is not necessary for us even to discuss

1. During the time of employment this salary was paid on the basis of $600 per month payable weekly.

the causes given for plaintiff's discharge, for under the law and the facts of this case his services could be terminated at the will of his employer. Therefore plaintiff is not entitled to be restored to his position with full salary or to receive any salary since his discharge or to be given any relief under his alternative demand for his salary for a period of five years.

Although plaintiff concludes his brief by stating that the decision of the lower court should be reversed in its entirety, he concedes that under the law of Louisiana there can be no employment contract for life, but argues that we should find that the parties here intended a five-year contract. There is no evidence in the record to support this contention or prove any such intention. However, he still argues and contends that under the contract he is entitled to purchase 25 per cent of the stock of the defendant corporation. He says that the corporation had no stock for sale, and that the only source from which this 25 per cent of the stock could come was from Pendleton, president of the corporation, who was the owner of all the stock except two outstanding shares. He argues that the obligation to transfer the stock was on Pendleton individually, who had induced him to terminate his employment with the Federal Bureau of Investigation and enter into a contract of employment with the corporation.

Since there is no merit in this contention, plaintiff is not entitled to the relief sought. As we view the matter, plaintiff was to be given an opportunity to purchase 25 per cent of the stock only in the event his services proved satisfactory and he remained in the employ of the corporation. As we have previously said, the evidence does not support plaintiff's contention that Pendleton individually or on behalf of the corporation induced him to leave his employment with the F.B.I. Moreover, in all their negotiations Pendleton refused, as we have pointed out above, to agree to any terms of employment or to a provision giving plaintiff the absolute right to purchase any stock in the corporation. Plaintiff's own understanding of this matter is embodied in his letter to Pendleton of March 2, 1953, in which he wrote: "It is my feeling and understanding that other items mentioned in employment contract submitted to you by Al Flettrich are to be only voluntary measures, on your part, made available to me, at your discretion, depending on and at the time you are satisfied with my performance. This feeling of satisfaction of course can only be fostered and attained by satisfactory service over a period of time." Among the "other items" referred to in this paragraph was the right to purchase 25 per cent of the corporation's stock.

The judgment is affirmed at plaintiff's costs.