FRANK TATE
v.
WOMAN'S HOSPITAL FOUNDATION D/B/A WOMAN'S HOSPITAL
2008 CA 2577
Court of Appeals of Louisiana, First Circuit.
January 29, 2010.
Not Designated for Publication
JILL L. CRAFT, CRYSTAL G. LaFLEUR, Counsel for Plaintiff/Appellant Frank Tate
CHARLES H. HOLLIS, Counsel for Defendant/Appellee Woman's Hospital Foundation d/b/a Woman's Hospital
Before: WHIPPLE, PARRO, PETTIGREW, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this suit for damages against an employer for invasion of privacy, intentional infliction of emotional distress, defamation, and abuse of rights, the plaintiff appeals a judgment granting the defendant-hospital's motion for summary judgment and ordering the dismissal of his suit. The claims were made in connection with the defendant's investigation of an incident of workplace misconduct that took place in January 2006, which required that all maintenance department employees, including the plaintiff, submit to DNA testing or suffer termination from employment.
In response to the plaintiff's petition for damages filed on May 23, 2006, the defendant filed a motion for summary judgment, asserting that the plaintiff's claims failed as a matter of law due to the lack of evidence to prove all of the elements of each claim. In support of its motion, the defendant offered excerpts from the depositions of three of its employees and the plaintiff. The plaintiff opposed the motion, offering the excerpts from his deposition, as well as the depositions of six employees of the defendant, an employee of the company that performed the testing, and the doctor who treated him for high blood pressure. He also offered a February 22, 2006 letter written by him to the defendant voicing his innocence and objecting to the DNA testing; his April 23, 2008 affidavit; medical records relating to treatment received on March 1, 2006, for elevated blood pressure he attributed to stress at work; a memo from an employee of the defendant; a March 12, 2006 email from an employee of the defendant; and the DNA collection and analysis authorization form. These documents were referred to in one or more of the depositions of experts that were introduced.
An undated memo from the director of building operations to all building operations staff concerning a meeting held in the maintenance shop on Friday, January 6, 2006, stated, in pertinent part:
Coby Hebert reported back to work after his leave of absence. Someone put urine in his toolbox. He was very upset about this. Coby reported the incident. Administration read the report and feels this goes far beyond a practical joke. Administration wants to know who did this and is willing to do whatever it takes, including DNA testing.
It has come to my attention that there have been other practical jokes and horseplay that have been occurring in the shop. Things such as locks having silicone put in them and a stake driven through the top of another employee's toolbox. Building Operation policy forbids this kind of behavior and I want it to stop now. I will discipline any employee who carries out this kind of behavior. I understand that sometimes we do things in jest but some of these incidents have gone too far. If you do something to someone and can't tell him or her about it after the laugh, it is wrong. Doing [anything] to someone else as "a joke" and remaining anonymous or destroying property is unacceptable behavior.
It is my hope that whoever did this would take responsibility and come to me or someone in HR. Whatever the reason it was done is not as important as taking responsibility for this action and not putting co-workers though testing along with using hospital resources to find out who did it. It will cost a lot of money and disruption to others if the person who did this remains quiet. My office is open and I would hope this could be resolved equitably and quickly.
In his affidavit, the plaintiff averred that he and his co-workers were informed that, if no one confessed to the misconduct, DNA testing would be conducted and that employees who declined to submit to the testing would be terminated. The plaintiff informed the defendant that he was not responsible for the incident and that he opposed DNA testing. Nonetheless, the plaintiff signed a DNA collection and analysis authorization form, which provided:
Woman's Hospital has requested that I allow Buccal swabbing of the inside of my cheek(s) in order to collect a DNA sample that will be analyzed by ReliaGene Technologies in relation to an investigation of vandalism of a Maintenance employee's toolbox.
Woman's Hospital has assured me that my DNA sample will not be used for any purpose other than what is stated above, that ReliaGene will never know my identity, that the sample I provide will be returned to me and any artifacts created in the analysis process will be destroyed and I will be advised of that destruction, and that ReliaGene will not share my DNA profile or release the results of their analysis with any local, state, federal or international agency, or any entity or individual other than Stan Shelton at Woman's Hospital.
By my signature below, I acknowledge the above and grant permission for the Buccal swabbing of the inside of my cheek(s) and the DNA analysis of that biological sample as part of the investigation of the vandalism of a Maintenance employee's toolbox. My signature does not mean that I agree in principle with the testing, it simply means that I understand the above and am willing[1] to cooperate with the investigation.
The plaintiff signed this form in the presence of a witness on March 6, 2006, and included the following handwritten notation on the form to reflect that he disagreed with the testing: "Protest. I [think] this DNA testing is illegal."
In his affidavit, the plaintiff averred that he did not voluntarily sign the DNA authorization form in that he was forced to give a DNA specimen. He explained that he felt compelled to do so since he would risk losing his job if he refused. Furthermore, he declared in his affidavit that he was not adequately informed about what would happen with his DNA or genetic information. The plaintiff complained about the manner in which the defendant investigated the incident. He faulted the defendant for failing to contact the police department to investigate the incident and to take his fingerprints.
The May 12, 2006 email by Stanley Shelton, whose deposition excerpt was introduced, provided an update on the DNA testing and stated:
This is to let you know that we've concluded our investigation into the "toolbox" incident. While there was a match of the DNA from the toolbox and the DNA of one of our employees, we've determined that the overall results of the entire investigation are not conclusive enough to take disciplinary actionwe are just not willing to risk punishing a potentially innocent person.
Without going into too much detail, I can say that the person appeared to have no motive or history of horseplay, and his behavior during the investigation was not at all consistent with how a guilty person would likely act. Further, the second and significantly weaker DNA marker that was present in all three of the samples we obtained from the toolbox drawer does support the theory that urine was scooped or drawn out of a urinal. Ultimately, we are content to leave it a mystery and move on, with the belief that everyone realizes horseplay or pranks of any kind are not appropriate for our workplace.
As I've said before, I'm sorry that this incident ever happened and that you, the department and the hospital had to endure its embarrassing investigation. In keeping with our commitment, I'll be working with Reliagene to return your DNA material to you as soon as possible. Thanks you so much for your cooperation and patience during this process.
In a May 29, 2006 report by Baton Rouge television station WAFB, the reporter noted that the defendant declined an interview but provided the following statement:
We did get a match, but after doing some counseling with the employee and reviewing the matter, there will be no disciplinary action, no more DNA sampling and no further pursuit of the case.
The report indicated that other facts about the incident were obtained from counsel for the plaintiff, as well as from the lawsuit filed by the plaintiff.
After reviewing all of the evidence that was offered in connection with the motion for summary judgment, the trial court granted the defendant's motion and dismissed the plaintiff's suit. In oral reasons, the trial court found that the plaintiff had not met two of the elements of the claim for intentional infliction of emotional distress in that he failed to show extreme or outrageous conduct and that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from the conduct. Also, the trial court found that the plaintiff's claim for defamation failed because publication in this case was not done by the defendant. Furthermore, absent evidence of a predominant motive to cause harm, the trial court found that the plaintiff failed to show a genuine issue of material fact as to his claim for abuse of rights by the defendant, especially when considering that there was a legitimate motive for the defendant's conduct. Finally, in light of the plaintiff's consent to DNA testing, the trial court found there could be no invasion of privacy.
On appeal, the plaintiff assigns the following as error:
1. The trial court erred in failing to consider testimony and evidence that the plaintiff's consent to the DNA testing was vitiated by duress and that the defendant falsely told the plaintiff that all of his DNA/genetic information would be returned, in concluding that there was no invasion of the plaintiff's privacy;
2. The trial court erred in dismissing the plaintiff's intentional infliction of emotional distress claims, and concluding that the defendant's forced and permanent extraction of a person's DNA/genetic information was not extreme or outrageous and that the defendant did not desire to inflict or knew that severe emotional distress would result from such testing;
3. The trial court erred in dismissing the plaintiff's defamation claims, concluding that there was no publication by the defendant; and
4. The trial court erred in dismissing the plaintiff's abuse of rights claims where the trial court wrongly concluded that the plaintiff did not show the defendant's predominant motive was to harm the plaintiff.
Appellate courts review summary judgments de novo. Thus, this court uses the same criteria as the trial court in determining whether summary judgment is appropriate-whether there is a genuine issue of material fact and whether mover is entitled to judgment as a matter of law. Jones v. Estate of Santiago, 03-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006. A "genuine issue" is a "triable issue." An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Further, a fact is "material" when its existence or nonexistence may be essential to a plaintiffs cause of action under the applicable theory of recovery. Jones, 03-1424 at p. 6, 870 So.2d at 1006.
After a thorough review of the record and relevant jurisprudence, we find that the trial court's oral reasons for judgment adequately explain its decision with respect to plaintiff's claims of intentional infliction of emotional distress, defamation, and abuse of rights. The issues regarding these causes of action involve no more than an application of well-settled legal principles. Once the defendant pointed out to the court that there was an absence of factual support for one or more elements essential to each of the plaintiff's claims, it was necessary for the plaintiff to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof at trial; failure to do so shows that there are no genuine issues of material fact. See LSA-C.C.P. art. 966C(2); Washauer v. J.C. Penny, 03-0642, p. 3 (La.App. 1 Cir. 4/21/04), 879 So.2d 195, 197. Although the plaintiff challenged several of the trial court's findings, the record is devoid of factual support for these challenges. Accordingly, there are no genuine issues of material fact on these issues. Therefore, the trial court did not err in granting the defendant's motion for summary judgment as to the plaintiff's claims of intentional infliction of emotional distress, defamation, and abuse of rights.
However, we find merit in the plaintiff's arguments regarding his invasion of privacy claim. Upon a thorough review of the record, we conclude that the evidence presented by the plaintiff in opposing the defendant's motion for summary judgment gives rise to a genuine issue of material fact as to whether the plaintiff's consent to the DNA testing was voluntary. Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice. Jones, 03-1424 at p. 6, 870 So.2d at 1006; Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 28 (La. 7/5/94), 639 So.2d 730, 751. Nonetheless, Louisiana courts have recognized that, while rare, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent. Jones, 03-1424 at p. 6, 870 So.2d at 1006; Smith, 93-2512 at p.28, 639 So.2d at 751. Such is not the case before us. The plaintiff alleged duress in his petition and further stated in his deposition and in his affidavit that he felt that he was forced to give his DNA, or lose his job. The plaintiff also indicated on the consent form itself that he was forced to cooperate in the investigation. A genuine issue of material fact remains as to the plaintiff's state of mind in signing the consent. Given that the plaintiff's intent is at issue herein, we conclude that summary judgment was not appropriate on this issue.
For these reasons, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings. We affirm that portion of the summary judgment regarding the plaintiff's claims of intentional infliction of emotional distress, defamation, and abuse of rights and reverse that portion of the judgment regarding the plaintiff's claim of invasion of privacy. Costs of this appeal are assessed equally.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PARRO, J., dissenting in part.
In his petition, Frank Tate (Tate) asserted a claim against Woman's Hospital for tortious invasion of privacy[1] for compelling him to submit to DNA testing of his urine in connection with workplace misconduct. In ruling on Woman's Hospital's motion for summary judgment, the trial court found there could be no invasion of privacy in light of his consent to DNA testing. Tate urged that the trial court erred in failing to consider deposition testimony and evidence bearing on whether his consent to the DNA testing was vitiated by the duress caused by the thought of losing his job and misrepresentations made by Woman's Hospital regarding the return of his DNA/genetic information.
The majority correctly finds that the evidence presented by Tate in opposing Woman's Hospital's motion for summary judgment gives rise to a genuine issue of material fact as to whether Tate's consent to the DNA testing was voluntary, the resolution of which is not appropriate for summary judgment. However, I feel that the issue of consent is not determinative of Tate's claim for invasion of privacy in light of the following facts: his employment with Woman's Hospital was "at will," no allegation of discrimination was made, no government conduct was involved, and he did not allege a violation of any other pertinent statutory provision. See LSA-C.C. art. 2747[2]; Pechon v. National Corp. Service, Inc., 234 La. 397, 100 So.2d 213, 216 (1958); Ouebedeaux v. Dow Chemical Co., 01-2297 (La. 6/21/02), 820 So.2d 542, 545-46; Fletcher v. Wendelta, Inc., 43,866 (La. App. 2nd Cir. 1/14/09), 999 So.2d 1223, 1229, writ denied, 09-0387 (La. 4/13/09), 5 So.3d 164; Herbert v. Placid Refining Co., 564 So.2d 371, 373 (La. App. 1st Cir.), writ denied, 569 So.2d 981 (La. 1990); Gil v. Metal Service Corp., 412 So.2d 706, 707-08 (La. App. 4th Cir. 1982), cert, denied, 414 So.2d 379 (La. 1982). See also LSA-Const. art. I, § 3[3]; LSA-Const. art. I, § 5.[4]
Under the facts of this case, I believe that Woman's Hospital is shielded from liability by the at-will doctrine of employment, resulting in Tate's inability to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof on his invasion of privacy claim at trial. Thus, there is no genuine issue of material fact. See LSA-C.C.P. art. 966(C)(2). Therefore, I believe that the portion of the trial court judgment granting Woman's Hospital's motion for summary judgment as to Tate's claim for invasion of privacy should also be affirmed. For these reasons, I respectfully dissent in part from the opinion of the majority.
WHIPPLE, J., concurring in part and dissenting in part.
I agree with the majority that while the defendant was entitled to summary judgment dismissing plaintiffs defamation claim, the defendant was not entitled to summary judgment in its favor, as a matter of law, dismissing plaintiffs invasion-of-privacy claim.
However, I disagree with the trial court's (and the majority's) dismissal, on summary judgment, of plaintiffs claim for intentional infliction of emotional distress. DNA testing and the resulting information gleaned thereby, is, by its very nature, intrusive, invasive, disturbing, distressful and fraught with the potential for abuse. In my view, the very fact that such invasive testing was demanded for a workplace prank, while less invasive investigative means were admittedly available, establishes "extreme and outrageous conduct" by the defendant.
Further, in my view, the defendant's purported failure or refusal to safeguard and return such genetic information precludes summary dismissal of plaintiffs claim that the defendant, by its coercive tactics herein, engaged in conduct that was substantially certain to result in severe emotional distress.
For these reasons, I respectfully concur in part and dissent in part.
NOTES
[1] The word "willing" was struck through and the word "forced" was handwritten below it.
[1] In particular, Tate alleged:

The actions of defendant were unreasonable and further served to intrude upon and invade Petitioner's right of privacy in his genetic information, his genetic profile, and his DNA, hence, constituting the tort of invasion of privacy.
[2] LSA-C.C. art. 2747 provides:

A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
[3] LSA-Const. art. I, § 3, provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
[4] LSA-Const. art. I, § 5, provides:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Section 5 seems to be a counterpart to the Fourth Amendment of the federal constitution; therefore, it is questionable whether Section 5 is intended to protect against private conduct, as well as government conduct. See Parish National Bank v. Lane, 397 So.2d 1282, 1286 n. 8 (La. 1981); Casse v. Louisiana General Services. Inc., 531 So.2d 554, 555 (La. App. 5th Cir.), writ denied, 533 So.2d 375 (La. 1988).