**TIGER BEND, L.L.C.**

v.

**TEMPLE–INLAND, INC., et al.**

**No. 98–424–BM2.**

United States District Court, M.D. Louisiana.

June 15, 1999.

---

Robert Bruce Macmurdo, Steffes & Macmurdo, LLP, Baton Rouge, LA, for plaintiff.

Paul G. Preston, Joseph (J.) E. Cullens, Jr., Preston & Cowan, LLP, New Orleans, LA, for defendants.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on defendants', Temple–Inland, Inc. and Temple–Inland Forest Products Corporation (referred to jointly as "Temple–Inland"), motion for summary judgment. Temple–Inland contend plaintiff's claims against

defendants have prescribed as a matter of law. For reasons which follow, defendants' motion for summary judgment is granted in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Tiger Bend, L.L.C., filed this action as the present owner of the Shenandoah Bend apartment complex located in Baton Rouge. This suit was originally filed in the 19th Judicial District Court of Louisiana against defendants alleging they "are liable to it for all damages that it has sustained as a result of the defective hardboard siding material that was manufactured and sold by the defendants and which was installed in the Shenandoah Bend apartment building."[1] Defendants timely removed plaintiff's suit to this Court.

The parties agree that Temple–Inland did in fact manufacture some hardboard siding products found at the apartment complex which is the subject of this suit. However, plaintiff cannot specifically identify the products allegedly manufactured by Temple–Inland.[2] Nor can plaintiff provide the date of the original purchase of defendants' products. Both parties, however, agree the sale of any hardwood siding used in the original construction of "Phase II" of the apartment complex took place sometime prior to May, 1985. This is the date the plaintiff alleges the apartment complex was substantially completed.[3] Since that date, plaintiff has continued to purchase Temple–Inland's product to replace deteriorated boards until 1998.

As for any hardboard siding purchased, plaintiff does not have any contracts or written agreements between itself and defendants nor between defendants and any prior owner or predecessor-in-interest to the subject property.[4]

## II. SUMMARY JUDGMENT STANDARD

After being presented with these facts, the Court focuses on the standard used to resolve defendants' motion. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]

The well-established criteria that there must be no *genuine* issue of *material* fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of *some* alleged factual dispute."[6] With respect to "materiality," because the underlying substantive law is referenced to determine what facts are material,[7] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant .[8] In addition, even if material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a

---

1. See paragraph 8 of plaintiff's original petition.

2. See defendant's Interrogatory, No. 5.

3. See defendant's Interrogatory, No. 4.

4. See defendant's Interrogatory, No. 6 and 7.

5. FED.R.CIV.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Ex-*

*ploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

6. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

7. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

8. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

verdict for the non-moving party.[9] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[10]

As always, the moving party bears the initial burden of establishing that there is no genuine issue of material fact.[11] Or as the case is here, to demonstrate affirmatively that there is no triable issue of fact as to each element of whatever affirmative defense the defendant may assert. In this situation, where the moving party bears the burden of persuasion on an issue at trial, the movant must not only satisfy the initial burden of production on the summary judgment motion by demonstrating that there is no genuine dispute as to any material fact, but also the ultimate burden of persuasion on the claim itself by showing that it would be entitled to a judgment as a matter of law at trial.[12] However, the Court need not determine whether the moving party has carried its ultimate burden of persuasion until after the movant's initial burden of production has been fulfilled. Upon such a showing by the movant, the non-moving party is required to come forward with evidence which demonstrates the existence of a genuine issue for trial. When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[13]

## III. ANALYSIS

The issue before the Court is a mixed question of law and fact. Whether the statute of limitations bars the plaintiff's action may depend on certain historical facts. To determine whether summary judgment is appropriate, the Court must determine whether there is any genuine dispute as to the facts of this case.

The Court must first determine the appropriate prescriptive period which is applicable for plaintiff's claims. Temple–Inland contend that plaintiff's claims sound in redhibition and have prescribed as a matter of law. Defendants rely on La.Civ. Code Art. 2534 as the applicable law governing the prescriptive period for a redhibition claim. However, the plaintiff contends that Art. 2534 does not apply under the facts of this case. Plaintiff argues that the statute in effect at the time the product was sold, former La.Civ.Code Art. 2546,[14] should be applied, not the revised article in effect today.[15]

■ In *Chance v. American Honda Motor Co., Inc.*, the Louisiana Supreme Court held that prescriptive periods apply retroactively. Focusing on La.Civ.Code Art. 6, the Louisiana Supreme Court explained that prescriptive periods relate to the remedy and, therefore, are treated as procedural laws and applied retroactively.[16]

**9.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. *See also Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder [sic] could reasonably find in [favor of the non-moving party], then summary judgment is improper.").

**10.** *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1064 (5th Cir.1993).

**11.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**12.** Fed.R.Civ.P. 56(c). *See also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

**13.** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

**14.** Former Louisiana Civil Code Article 2546 provided that an "action for redhibition may be commenced at *any time* provided a year has not elapsed since discovery of the vice." (Emphasis added)

**15.** The revision of La.Civ.Code Art. 2534 was effective January 1, 1995.

**16.** *Chance v. American Honda Motor Co., Inc.,* 635 So.2d 177 (La.1994), *citing Lott v. Haley,* 370 So.2d 521, 523 (La.1979). *See also In Matter of O'Connor,* 153 F.3d 258 (5th Cir. 1998).

Therefore, revised article 2534 is the applicable article governing the prescriptive period of redhibition claims.

According to La.Civ.Code Art. 2534, in pertinent part:

> B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.[17]

More significantly, official comment (b) of article 2534 explains that this article does not allow an unlimited time period to discover a defect. The comment points to La.Civ.Code Art. 3499 as the maximum time limit in which a party can bring a claim for redhibition. The comment states that "[u]nder this article [2534], an action in redhibition prescribes ten years from the time of perfection of the contract regardless of whether the seller was in good or bad faith." Article 3499, which is referenced in article 2534 comment (b), explains that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." Therefore, Temple–Inland contend that absent any legislation to the contrary, an action for redhibition must be brought within ten years of purchase of the product or one year of discovery of the product's redhibitory defect, whichever occurs first.

Plaintiff argues, however, that comment (b) of article 2534 is incorrect because the time for bringing a redhibition claim is governed by specific legislation. Plaintiff contends there is no maximum time limit on a redhibition claim when the manufacturer is a party. Thus, plaintiff argues that article 3499 should not be applied.

Plaintiff relies on *Beth Israel v. Bartley,*[18] *Inc.* to support its argument. In *Beth Israel,* a redhibition case, the court held that the prescriptive period did not run against the plaintiffs until ten years after the plaintiffs first noticed damage to their roof. To reach this conclusion, the court relied upon former article 2546 which allowed a redhibition suit to be commenced *at any time* provided a year had not elapsed since discovery of the vice. The Court finds that *Beth Israel* does not apply herein. As noted earlier in this opinion, this Court has found that former article 2546 does not apply in this case because it has been replaced with revised article 2534.

■ The Court also notes that plaintiff's argument would establish an unlimited time period in which a party could bring a redhibitory action, assuming it is brought within one year of discovery. This argument goes against the fundamental purpose of establishing prescriptive statutes. Prescriptive statutes afford a defendant economic and psychological security if no claim is timely made, and protect a defendant from stale claims and the inability to defend itself because of the loss of relevant proof.[19]

■ Despite the analysis set forth heretofore, plaintiff's argument that comment (b) of article 2534 is incorrect still has merit. The Court notes that La.Civ.Code Art. 3499 is not a preemptive provision. Article 3499 is a prescriptive provision which is subject to suspension and interruption. Assuming plaintiff can prove an equitable tolling doctrine applies, such as *contra non valentem,* article 3499's ten year prescriptive period has not expired to bar plaintiff's suit. The scenario accepted by Louisiana courts to suspend prescription under *contra non valentem* is as follows:

> Where the cause of action is not known or reasonably knowable by the plaintiff,

---

**17.** Defendants are presumed to have known of the existence of an alleged defect because they manufactured the product. See La.Civ. Code Art. 2545.

**18.** 579 So.2d 1066 (La.App. 4th Cir.), *writ denied,* 587 So.2d 696 (La.1991).

**19.** *Giroir v. South Louisiana Medical Center,* 475 So.2d 1040 (La.1985).

even though his ignorance is not induced by the defendant.[20]

The problem the Court sees with article 2534 comment (b) is that article 2534 essentially provides the same relief as *contra non valentem*. As mentioned above, La. Civ.Code Art. 2534 provides in pertinent part:

> B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was *discovered* by the buyer. (emphasis added).

Under both *contra non valentem* and article 2534, the running of prescription depends on the plaintiff's knowledge of the cause of action, i.e. discovery of the defect. Thus, the effect is the same regardless of whether the Court follows the guidance of comment (b) or not. If the Court follows comment (b), plaintiff asserts that *contra non valentem* suspended article 3499's ten year prescriptive period from running until discovery of the defect. Once discovery of the defect occurs, then article 2534 applies and plaintiff has one year to file its action. However, if the Court declines to follow comment (b) and article 3499's prescriptive period never applies, prescription does not commence until discovery of the defect. In both cases the effect is the same; prescription is one year from discovery. In short, comment (b) is simply superfluous and unnecessary. The Court will consider both parties positions in deciding this motion.

The Court must now determine whether Temple–Inland satisfy their initial burden of establishing facts in support of their affirmative defense. Temple–Inland contend that plaintiff's claims have prescribed because any sale of their hardboard siding used in the original construction of the apartment complex took place prior to May, 1985. Temple–Inland also argue that since this suit was filed in 1998, the ten year prescriptive period imposed by La.Civ.Code Art. 3499 has expired and plaintiff's claims are not timely. The Court finds that defendants have satisfied their initial burden; therefore, plaintiff is required to come forward with evidence to demonstrate the existence of a genuine issue for trial.

Plaintiff does not dispute the facts Temple–Inland rely upon in their motion for summary judgment. Instead, plaintiff contends that the doctrine of *contra non valentem nulla currit praescriptio* ("contra non valentem") applies in this action. Thus, plaintiff contends that prescription had not yet commenced for plaintiff's claim until plaintiff discovered the defect in Temple–Inland's product.

■ *Contra non valentem* is a judicially created exception to the running of prescription used by courts "[t]o soften the occasional harshness of prescriptive statutes."[21] The doctrine only applies in limited factual scenarios to suspend the running of prescription while the claimant is unable to bring suit. Plaintiff asserts the following accepted scenario for applying *contra non valentem* is applicable under the facts of this case:

> Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.[22]

■ Although application of *contra non valentem* is in direct contradiction to the articles in the Louisiana Civil Code on prescription,[23] this doctrine has not been overruled by Louisiana courts and is still a

**20.** *Corsey v. State of Louisiana*, 375 So.2d 1319, 1321–22 (La.1979). *See also Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 294 (5th Cir.1995).

**21.** *Lima v. Schmidt*, 595 So.2d 624, 629 (La. 1992).

**22.** *Corsey v. State of Louisiana*, 375 So.2d 1319, 1321–22 (La.1979). *See also Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 294 (5th Cir.1995).

**23.** La.Civ.Code Art. 3467 provides that "[p]rescription runs against all persons *unless exception is established by legislation.*" (emphasis added).

viable exception to the running of prescription.[24] However, Louisiana courts invoke the doctrine only under "exceptional circumstances" and construe its applicability strictly.[25] As for the commencement of prescription, the reasonableness of the plaintiff's action or inaction is the fundamental precept the Court must focus on in determining when prescription commences.[26]

Plaintiff contends that prescription did not commence before April 10, 1997. Plaintiff states that this was the date plaintiff notified Temple–Inland of the problem with the siding. Plaintiff explains that it notified Temple–Inland of its concerns after a principal of Tiger Bend heard of a class action lawsuit in Alabama which he mistakenly thought involved a claim that Temple–Inland's product was defective.[27] Plaintiff then filed suit on April 7, 1998 in the 19th Judicial District Court of Louisiana, within one year of its discovery.

Although plaintiff includes the date when it notified defendants, plaintiff does not provide the date when it acquired knowledge of an alleged defect. The Court will assume that the plaintiff discovered the information which caused it to notify Tiger–Inland on or after April 7, 1997.[28] Otherwise, the action was not filed within one year of discovery of the defect.

■ The Court must now determine when plaintiff had knowledge of the alleged defect. Plaintiff contends that prescription did not commence before April 10, 1997, the date it notified Temple–Inland of its knowledge.[29] Plaintiff also correctly points out that discovery is not presumed. Defendants have the burden of proving that the purchaser discovered the vice more than one year prior to filing suit.[30] The Court will, therefore, focus on whether defendants sufficiently carry their burden for purposes of summary judgment on this issue.

■ For purposes of both *contra non valentem* and the prescription period in redhibition actions, commencement of the prescription period is governed by the "discovery rule."[31]

Under the discovery rule, prescription does not commence until the date the injured party discovers or should have discovered the facts upon which his cause of action is based. In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction.[32]

To determine when plaintiff discovered there was an alleged defect in the hardwood siding, the Court focuses on the interrogatories attached to defendants' memorandum. The Court, after reading these interrogatories as well as plaintiff's memorandum in opposition, finds that plaintiff had knowledge of its cause of action before April 7, 1997.

**24.** *Plaquemines, Parish Comm'n v. Delta Dev. Co., Inc.,* 502 So.2d 1034, 1055–56 (La.1987) (repeal of La.Civ.Code Art. 3521 (1870) and its recodification in La.Civ.Code Art. 3467 did not abolish the doctrine of *contra non valentem*). *See also Corsey,* 375 So.2d at 1321.

**25.** La.Civ.Code Art. 3467 comment (d). *See also Rogers v. Corrosion Prods., Inc.,* 42 F.3d at 295; *Wimberly v. Gatch,* 635 So.2d 206, 211 (La.1994); *Plaquemines,* 502 So.2d at 1057.

**26.** *Beth Israel v. Bartley, Inc.,* 579 So.2d at 1072–73.

**27.** *See* Plaintiff's Memorandum in Opposition, p. 1.

**28.** In accordance with the standards applicable to a summary judgment motion, the Court must view the evidence and draw all reasonable inferences therefrom in favor of the plaintiff.

**29.** Again, the Court assumes knowledge was gained on the same day as notification to Temple–Inland.

**30.** *Beth Israel v. Bartley,* 579 So.2d at 1072, citing *Jordan v. Employee Transfer Corporation,* 509 So.2d 420 (La.1987).

**31.** *In re Ford Motor Co. Bronco II Product Liability Litigation,* 982 F.Supp. 388, 395 (E.D.La.1997).

**32.** *Id.* citing *Corsey,* 375 So.2d at 1322.

Plaintiff in its own memorandum admits that this product was expected to last for more than 100 years.[33] However, it continued to purchase the Temple–Inland product as replacement board for *deteriorated* hardboard used in the apartment complex's construction.[34] Plaintiff's answers to Temple–Inlands' Interrogatories also reflect that plaintiff had knowledge of deteriorated hardboard prior to April 10, 1997. Plaintiff explained that much of the original siding had deteriorated over the years and had been replaced.[35] Plaintiff also explained that prior to the apartment complex's last paint job in 1988, the most severely deteriorated siding was replaced.[36] Finally, plaintiff requests that its damages include the costs incurred over the years to replace deteriorated siding and to maintain the paint on deteriorated siding which has not been replaced.[37] Thus, plaintiff had knowledge that some of Temple–Inlands' product deteriorated by at least 1988. Despite this knowledge, plaintiff's first complaint to defendants was not until April 10, 1997, the date Cordell Haymon sent a letter to Temple–Inland informing them of problems with the siding. Plaintiff clearly had knowledge of the defect prior to this date.

Plaintiff's argument that prescription did not start until its principal "heard of a class action lawsuit in Alabama which he thought (mistakenly, it turned out) involved a claim that the Temple–Inland product was defective" has no merit.[38] Prescription runs from the discovery of the defect, not the cause of the defect.[39] Also, when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.[40] The plaintiff knew there was damage for many years prior to its letter dated April 10, 1997, but never inquired as to why a product expected to last for over 100 years was deteriorating. The Court finds that plaintiff had a reasonable basis to pursue a claim against a Temple–Inland prior to April 10, 1997. Therefore, plaintiff's claims have prescribed.

Plaintiff's argument that Temple–Inland's response to plaintiff's April 10th letter mislead plaintiff as to its cause of action is without merit. Any possible claims plaintiff had against Temple–Inland had already prescribed by April 10, 1997.

The Court must note that prescription may not have expired on all of plaintiff's claims. The Court does not know when the replacement siding was purchased. Thus, the Court cannot determine whether prescription expired for any possible redhibitory claims involving the replacement siding. Accordingly, the Court will issue a partial summary judgment dismissing plaintiff's redhibition claims against Temple–Inland for the alleged defect of siding used in the construction of Phase II of plaintiff's apartment complex. The defendants' motion is denied insofar as any claim based on replacement siding is concerned.

Therefore,

IT IS SO ORDERED.

**33.** Plaintiff's Memorandum in Opposition, p. 6.

**34.** See Affidavit of Cordell Haymon attached to Plaintiff's Memorandum in Opposition. (Emphasis added).

**35.** Plaintiff's Answer to Temple–Inland's Interrogatory No. 7. *See also* Answer to Temple–Inland's Interrogatory No. 18.

**36.** Plaintiff's Answer to Temple–Inland's Interrogatory No. 20.

**37.** Plaintiff's Answer to Temple–Inland's Interrogatory No. 21.

**38.** Plaintiff's Memorandum in Opposition, p. 1.

**39.** *In re Ford Motor Co. Vehicle Paint Litigation,* 1997 WL 539665 (E.D.La.1997).

**40.** *See* footnote 32.