# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-350

EMILE MOUTON

VERSUS

GENERAC POWER SYSTEMS, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2012-2312
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

## AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Matthew D. McConnell
McConnell Law Offices
Post Office Box 52024
Lafayette, Louisiana  70505-2024
(337) 347-6404
Counsel for Plaintiff/Appellant:
    Emile Mouton

**Ronald J. White**
**Murphy, Rogers, Sloss & Gambel**
**701 Poydras Street, Suite 400**
**New Orleans, Louisiana 70139**
**(504) 523-0400**
**Counsel for Defendant/Appellee:**
    **Generac Power Systems, Inc.**

**Cearley W. Fontenot**
**Oats & Marino**
**100 East Vermilion Street, Suite 400**
**Lafayette, Louisiana 70501**
**(337) 233-1100**
**Counsel for Defendant/Appellee:**
    **Metro Electric & Maintenance, Inc.**

**KEATY, Judge.**

Plaintiff appeals from the trial court's judgment granting Defendants' exceptions of prescription. For the following reasons, the trial court's judgment is affirmed in part, reversed in part, and remanded.

## FACTS AND PROCEDURAL BACKGROUND

On or about August 29, 2006, Plaintiff, Emile Mouton, purchased a residential generator from, and which was subsequently installed by, Metro Electric & Maintenance, Inc. The generator was manufactured by Generac Power Systems, Inc. Mouton also purchased an equipment maintenance contract from Metro Electric that became effective on September 5, 2006. Pursuant to this maintenance contract, Metro Electric was obligated to service the generator twice a year. Mouton continued purchasing this maintenance contract annually through July of 2011, and it expired in July of 2012.

Mouton contends that during this six-year period from 2006 to 2012, the generator failed to perform properly and/or required repair service every year. On April 23, 2012, Mouton filed suit against Defendants for the following: "A. Redhibition/Rescission; B. Breach of Contract and/or Implied and/or Express Warranties; C. Negligent Installation, Maintenance, and/or Repair." Mouton seeks reimbursement of the purchase price of the generator along with maintenance and repair costs. Mouton requests attorney fees, non-pecuniary damages, court costs, and legal interest.

Defendants filed answers which included affirmative defenses and peremptory exceptions. In its answer, Metro Electric filed a cross-claim adverse to Generac as the manufacturer. Mouton subsequently answered written discovery and supplied Defendants with his expert's report. Prior to Defendants' experts'

inspection of the generator, each Defendant filed exceptions of prescription, alleging that Mouton's suit had prescribed under Louisiana redhibition law pursuant to La.Civ.Code art. 2520.[1]  Metro Electric further asserted that Mouton had no right of action for negligent installation pursuant to La.Civ.Code art. 2520.

Mouton subsequently filed a motion to continue the hearing on the peremptory exceptions which were scheduled for June 24, 2013.  Since Generac's expert inspected the generator on May 15, 2013, Mouton alleged that the extra time would allow him to propound written discovery and obtain depositions from Generac's expert on prescriptive issues.  The motion to continue was denied.  After the hearing, the trial court granted all of Defendants' exceptions without reasons, dismissing the entire lawsuit against both Defendants.

Mouton then filed a motion for new trial and/or to amend judgment seeking to reverse the trial court's judgment on grounds of prescription and alternatively seeking to amend the judgment to reinstate the breach of service contract and negligent maintenance and repair claims.  The trial court denied the motion, and Mouton appealed.

On appeal, Mouton asserts the following six assignments of error:

---

[1] Louisiana Civil Code Article 2520 provides:

The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.  The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.  The existence of such a defect limits the right of a buyer to a reduction of the price.

(1)     the trial court manifestly erred in granting Defendants'
        exceptions of prescription regarding his redhibitory and
        negligent installation claims;

(2)     the trial court manifestly erred in relying on facts alleged by
        Defendants although not proven by sworn affidavits or
        testimony;

(3)     the trial court manifestly erred in granting Defendants'
        exceptions via summary judgment where Mouton presented
        material issues of fact;

(4)     the trial court manifestly erred by making impermissible
        credibility determinations;

(5)     the trial court manifestly erred by denying Mouton time to
        conduct adequate discovery before it heard Defendants'
        exceptions of prescription; and

(6)     the trial court manifestly and legally erred by dismissing the
        entire lawsuit even though Defendants' exceptions challenged
        only a couple of Mouton's alternative legal theories of liability.

## STANDARD OF REVIEW

At the outset, we note that evidence was submitted at the hearing on the exceptions. In that regard, Louisiana jurisprudence provides for the following standard of review:

> If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Stobart v. State, through DOTD*, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*, 617 So.2d at 882-83.

*Menard v. Iberia Parish Sheriff's Office*, 11-707, p. 2 (La.App. 3 Cir. 12/7/11), 77 So.3d 1090, 1092 (quoting *Rando v. Anco Insulations, Inc.*, 08-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082), *writ denied*, 12-73 (La. 3/9/12), 84 So.3d 553. Thus, we will review the trial court's findings of fact utilizing the manifest error—clearly wrong standard of review.

3

I.      **Prescription as to Redhibition and Negligent Installation**

A.      **Redhibition**

In Louisiana, prescription in a redhibition claim is codified at La.Civ.Code art. 2534 which provides:

> A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
>
> . . . .
>
> B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
>
> C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.

Comment (b) under La.Civ.Code art. 2534 further provides that "[u]nder this Article, an action in redhibition prescribes ten years from the time of perfection of the contract regardless of whether the seller was in good or bad faith. See C.C. Art. 3499."[2]

In his first assignment of error, Mouton contends that the trial court manifestly erred in granting Defendants' exceptions regarding his redhibitory claim. Mouton states that the ten-year prescriptive period as stated in Comment (b) is applicable. Since the petition was filed on April 23, 2012, which was less than

---

[2] Louisiana Civil Code Article 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

six years after the generator was purchased, Mouton contends that it has not prescribed on its face as to his redhibition claim.

In opposition, Defendants contend that the ten-year prescriptive period is inapplicable. Metro Electric contends that the four-year or one-year prescriptive period is applicable pursuant to La.Civ.Code art. 2534(A)(1). As a manufacturer, Generac contends that only the one-year prescriptive period, as opposed to the four-year prescriptive period, applies to it pursuant to La.Civ.Code art. 2534(B).[3] Metro Electric further states that Mouton's reliance on Comment (b) is misplaced.

In support of its argument that Mouton's reliance on Comment (b) is misplaced, Metro Electric cites the Louisiana federal court case of *Tiger Bend, L.L.C. v. Temple-Inland, Inc.*, 56 F.Supp. 2d 686 (M.D. La. 1999). In *Tiger Bend*, 56 F.Supp. 2d at 690, the court analyzed Comment (b) as follows:

> [O]fficial comment (b) of article 2534 explains that this article does not allow an unlimited time period to discover a defect. The comment points to La.Civ.Code Art. 3499 as the maximum time limit in which a party can bring a claim for redhibition. The comment states that "[u]nder this article [2534], an action in redhibition prescribes ten years from the time of perfection of the contract regardless of whether the seller was in good or bad faith." Article 3499, which is referenced in article 2534 comment (b), explains that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

Metro Electric states that Comment (b) simply explains that there is not an unlimited time to discover a defect and refers to La.Civ.Code art. 3499 as the maximum time limit for a party to bring a redhibitory action. Metro Electric

---

[3] According to *Goodman v. Roberts*, 587 So.2d 807 (La.App. 3 Cir. 1991), a manufacturer is presumed to know of the defect in its product. As such, prescription commences to run against the manufacturer one year after discovery of the defect by the consumer. *Id.* This presumption is codified in La.Civ.Code art. 2545.

contends that Comment (b) provides an absolute deadline of ten years for prescription of a redhibitory claim in conjunction with the discovery of a defect.[4]

We agree with Metro Electric in that Mouton's reliance on Comment (b) is misplaced. As cited by Generac, *Cunard Line Ltd. Co. v. Datrex, Inc.*, 05-1171, p. 7 (La.App. 3 Cir. 4/5/06), 926 So.2d 109, 114, provides that when a cause of action is based on a defect, "it is limited to the prescriptive period for redhibitory defects and may not avail itself of the ten-year prescriptive period for conventional obligations." Since the petition alleges that the generator "began to show signs that it was defective" and that the generator "has proven defective for purposes of Louisiana redhibition law," it is clear that Mouton's cause of action lies in redhibitory law. As such, the ten-year prescription period is inapplicable, and we must review the petition to determine whether Mouton's cause of action prescribed within the four-year or one-year period provided for in La.Civ.Code art. 2534(A)(1) and La.Civ.Code art. 2534(B).

Normally, "[t]he party pleading prescription has the burden of proof." *Ins. Storage Pool, Inc. v. Parish Nat'l Bank*, 97-2757, p. 7 (La.App. 1 Cir. 5/14/99), 732 So.2d 815, 820. "If on the face of the petition it appears prescription has run, however, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period." *Reno v. Perkins Engines, Inc.*, 98-1686, p. 2 (La.App. 1 Cir. 9/24/99), 754 So.2d 1032, 1034 (footnote/citation omitted), *writ denied*, 99-3058 (La. 1/7/00), 752 So.2d 863. Thus, we will review the petition to see if prescription has run on its face.

---

[4] The federal court in *Tiger Bend,* stated that La.Civ.Code art. 3499 is not a preemptive provision but rather a prescriptive provision. As such, it is subject to suspension and interruption. The court explained that under La.Civ.Code art. 2534, "the running of prescription depends on the plaintiff's knowledge of the cause of action, i.e., discovery of the defect." *Id*. at 691.

In his petition, Mouton states that the sale of the generator took place on August 29, 2006. Mouton alleges that soon after installation, the generator "began to show signs that it was defective." Mouton contends that "[w]ithin the first year that it was placed in service METRO ELECTRIC personnel reported that the cooler filler cap and the starter required replacement/repair." Mouton alleges that "[i]n August and September 2008, the Standby Generator failed to provide automatic substitute electrical power when the utility service was interrupted during Hurricanes Gustav and Ike, respectively." Mouton contends that the generator "has failed to function properly and/or required repair service every year, up to and including 2012, since it was purchased and installed."

Metro Electric's job tickets and Generac's warranty claims, which are contained in the record, support Mouton's allegation in his petition that the generator required repairs in 2006 and 2007 for a radiator cap and a starter. Defendants' records, however, fail to show that repairs were performed after 2007. In his discovery responses, which are contained in the record, Mouton was unable to provide evidence showing that the generator required repair after 2007.

Thus, November 11, 2007[5] was the date of the last repair that occurred on the machine.[6] The four-year prescriptive period began to run on November 11, 2007 and prescribed on November 11, 2011. Mouton filed suit on April 23, 2012. Based on the face of the petition, the four-year prescriptive period had run. The

---

[5] Generac's records show that November 11, 2007 was the date that the starter was replaced.

[6] Although Mouton did not specifically state that November 11, 2007 was when the generator was repaired, his petition states that "[w]ithin the first year that it was placed in service METRO ELECTRIC personnel reported that the cooler filler cap and the starter required replacement/repair." Since Mouton's petition states that it was purchased in 2006, 2007 would be "within the first year that it was placed in service."

burden, therefore, shifted to Mouton to prove a suspension or interruption of the prescriptive period.

In that regard, Mouton contends in his appellate brief that prescription was interrupted annually from 2006 through 2012 when Metro Electric performed maintenance and service on the generator pursuant to the maintenance contract. Mouton alleges that prescription began anew every year when Metro Electric tendered the generator back to Mouton. We disagree.

The annual maintenance contracts which are contained in the record as exhibits show that Metro Electric serviced the generator twice a year. This included a complete check-up of the operation of the equipment. Metro Electric also inspected the following: fuel lines for wear, cracks, and leaks; exhaust system for safety and leaks; exhaust lines, muffler for cracks and leaks; drain moisture from condensation traps; air shrouds for leaks and security; clean cooling fins; check electrical wire for fray and connections; fuel filter, battery water, gravity of cells and connections; generator brushes and bearings; alternator for charging; control box wiring, voltage frequency settings; transfer switch for proper settings and operation; includes if needed: spark plugs, points, and condenser; and replace oil, oil filter, and air filter twice a year.

Metro Electric's job tickets which are also contained in the record show the notes taken during the regularly-scheduled maintenance performed after November 11, 2007. Specifically, no problems were reported on April 9, 2008. On March 18, 2009, a latch on the machine was broken. A broken latch does not interfere, however, with the operation of the generator. On September 16, 2009, the broken latch was replaced. On April 14, 2010, no problems were noted. On May 21, 2011, and October 29, 2011, the generator was noted to be in good

8

condition. During Metro Electric's final maintenance of the generator on July 13, 2012, it was noted that the generator "[c]ranked [r]ight up." The foregoing shows that the generator did not fail during the regularly-scheduled testing. In his petition and discovery responses, Mouton also stated that the generator "usually performed appropriately for regular-scheduled testing."

Keeping in mind the annual tests, we point to *Williams v. Ford Motor Co.*, 307 So.2d 159 (La.App. 1 Cir. 1974), *writ denied*, 309 So.2d 684 (La.1975), a first circuit case cited by Defendants wherein the plaintiff brought a redhibitory action against the manufacturer and dealer to rescind the sale of a car. The trial court dismissed the action, and the plaintiff appealed. The appellate court affirmed the trial court's judgment and held that "[i]t is well settled in our jurisprudence that where the seller attempts to remedy a defect in the object sold, the one year prescription in bringing the redhibitory action begins to run only from the time the seller abandons his attempt to repair the defect." *Id*. at 160. The appellate court stated:

> Based upon the facts presented we sustain the judgment of the trial court. Plaintiff shows that she returned her automobile to Richard's Ford Company, Inc. on October 27, 1972, and complained about excessive oil consumption and a defective speedometer. The speedometer was repaired and the engine was filled with oil. No work was performed on the engine to correct the excessive use of oil. Plaintiff was billed for this service but she testifies that she never paid this bill. Plaintiff next returned her automobile to the defendant on February 22, 1973, for a State Safety Inspection and her horn was repaired at this time for inspection purposes for which she was billed and for which she paid. Subsequently plaintiff had her automobile serviced and repaired at establishments other than that of the defendant.

> At the time that this suit was filed more than one year had elapsed since the last time the defendant may be presumed to have made an attempt to remedy the defects of which plaintiff complained. *The running of prescription was not interrupted on February 22, 1973, when the horn was repaired for the purposes of safety inspection.*

*Id.* (emphasis added).

Similar to the safety inspection in *Williams*, the generator in the present case was inspected and serviced by Metro Electric twice a year pursuant to the maintenance contract. Just as the court in *Williams* found that the repair of the horn did not address the defects complained of in the plaintiff's petition, the annual maintenance performed on the generator in the present case, which Mouton admitted was successful, did not address the defects complained of in his petition. Thus, the annual inspections in the present case did not interrupt prescription as per *Williams*. For the same reasons cited in *Williams*, the broken latch Mouton complained of, and which was repaired in 2009, also failed to interrupt prescription.

We further find that Mouton's claim prescribed pursuant to the one-year prescriptive period provided for in La.Civ.Code art. 2534(A)(1) and La.Civ.Code art. 2534(B). In that regard, "prescription begins to run when the defect manifests itself, not on the date the underlying cause of the defect is found." *Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270, p. 3 (La.App. 3 Cir. 10/3/12), 99 So.3d 739, 741. Mouton provided supplemental discovery responses which are contained in the record wherein he lists the following dates that his generator failed to work during power outages: September 27, 2006; December 13, 2006; July 1, 2007; March 6, 2008; August 7, 2010; November 26, 2010; December 27, 2010; January 31, 2012; February 26, 2012; August 19, 2012; and October 5, 2012. Since the last repair occurred on November 11, 2007, the next time Mouton experienced a power outage following the last repair was on March 6, 2008. At this point, Mouton should have known that the generator did not work despite the repairs. He also

10

should have known that he had one year to assert a redhibitory action, i.e., until March 6, 2009.

Mouton's supplemental discovery responses further indicated that there were no power outages in 2009. As mentioned above, the generator worked for the annual maintenance which occurred during 2009. Mouton contends that his generator failed to work on August 7, 2010, November 26, 2010, and December 27, 2010. Even if Mouton had no knowledge of a defect in the years prior to 2010, he should have known of a defect following these three power outages in the latter part of 2010. He should have discovered a defect by December 27, 2010. At that point, the one-year prescriptive period began to run at which time Mouton had until December 27, 2011, to assert a claim for redhibition. Suit was not filed until over one year later on April 23, 2012, and, thus, was untimely. Similarly, Metro Electric's subsequent repair to the generator in February 2012 did not interrupt prescription since prescription had already run on December 27, 2011.

Thus, any claim for redhibition utilizing the four-year prescriptive period or one-year prescriptive period prescribed by April 23, 2012. Accordingly, the trial court was not manifestly erroneous in granting Defendants' exceptions of prescription.

### B. Negligent Installation

Mouton further contends that the trial court manifestly erred in granting Metro Electric's peremptory exception on his negligent installation claim. Mouton alleges that his negligent installation claim is timely pursuant to the ten-year prescriptive period provided for in La.Civ.Code art. 3499.[7] In opposition, Metro

---

[7] Louisiana Civil Code Article 3499 provides, "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

Electric cites *Sharpe v. Claiborne Enterprises, Inc.*, 461 So.2d 591 (La.App. 1 Cir. 1984), *writ denied*, (La.1985), 464 So.2d 302, in support of its argument that Mouton's suit prescribed. Metro Electric contends that the one-year prescriptive period governing redhibitory defects is applicable rather than the ten-year prescriptive period governing breach or negligent execution of an installation contract.

In *Sharpe*, a purchaser of automobile wheels brought suit against the seller for injuries sustained in an automobile accident. Believing that the one-year prescriptive period was applicable rather than the ten-year prescriptive period, the trial court granted a peremptory exception in favor of the defendant. On appeal, the issue was which prescriptive period applied.

Notably, the plaintiffs alleged that when they purchased the wheels from the defendant, the sales contract was both a contract to sell and a contract to install the wheels on the vehicle. The plaintiffs contended that the defendant's negligence in improperly installing the wheels constituted a negligent breach of the installation contract which gave rise to a breach of contract claim for personal injury damages. In opposition, the defendants argued that any contractual liability was governed by the sales articles on redhibition because the principal obligation of the contract was that of sale.

The appellate court in *Sharpe* noted that in reviewing prior cases regarding the characterization of sales and service contracts, the principal obligation of the contract determines its characterization. In affirming the trial court's judgment, the appellate court held:

> We are not convinced by the allegations of plaintiffs' petition that Claiborne entered into an installation contract with Mr. Sharpe. The principal obligation of the contract was the sale of the mag

> wheels. The fact that Claiborne undertook to install them on the truck incidental to the sale does not change the transaction from that of a sales contract to an installation contract. "The mere fact that an obligor may be involved in the installation and delivery of the equipment will not change the characterization of the obligation from that of a sales contract and therefore the rules governing a sale will control."

*Id*. at 593 (citations omitted).

Similar to the facts in *Sharpe*, the generator in the present case was purchased on or about August 29, 2006. Thus, the principal obligation of the contract was the sale of the generator. The fact that Metro Electric installed it at Mouton's residence in addition to the sale does not change the transaction from that of a sales contract to an installation contract. Accordingly, the one-year prescriptive period governing redhibitory defects governs. Given the applicability of the one-year prescriptive period, Mouton's suit for negligent installation has prescribed pursuant to our reasoning above. Accordingly, the trial court was not manifestly erroneous in granting Defendants' exceptions with respect to his negligent installation claim.

## II.    Necessity of Sworn Affidavits or Testimony

In his second assignment of error, Mouton alleges that the trial court was manifestly erroneous in relying on Defendants' alleged facts which were not proven through sworn affidavits or testimony. Evidence introduced by Defendants was in the form of Metro Electric equipment maintenance contracts, the petition, warranty claims submitted to Generac for the two repairs required in 2006 and 2007, and the maintenance records. According to the trial transcript, Mouton did not object to the inclusion of the documents into the record. Rather, he adopted the exhibits as his at the hearing.

13

Louisiana Code of Civil Procedure Article 931 provides, in pertinent part: "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." While the statute indicates that evidence may be introduced, it fails to state that such evidence must be in the form of sworn affidavits or testimony. Mouton, likewise, has failed to cite any authority in support of his position. On the other hand, Generac correctly cites *Boneno v. Lasseigne*, 514 So.2d 276, 279 (La.App. 5 Cir. 1987), wherein the court held that a sworn affidavit is hearsay and there is "no such statutory exception permitting the use of affidavits in a trial of a peremptory exception of prescription." Since there is no requirement that sworn affidavits or testimony must be utilized and since Louisiana jurisprudence directly conflicts with Mouton's allegation, the trial court was not manifestly erroneous in relying on Defendants' evidence even though it was not in the form of sworn affidavits or testimony.

### III. Contra Non Valentum

Mouton also asserts that the doctrine of contra non valentum suspends prescription. The right to assert this doctrine, according to Mouton, arises from the generator inspection wherein defects were revealed. Mouton further asserts that this right also stems from modification and repair attempts after installation which concealed problems.

Louisiana jurisprudence recognizes contra non valentem as a way to suspend prescription when the circumstances fall into one of the four following categories:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract

or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Wells v. Zadeck*, 11-1232, pp. 8-9 (La. 3/30/12), 89 So.3d 1145, 1150.

Our review of the petition shows that Mouton alleges that the generator never properly worked and was defective from the time it was purchased in 2006. The contra non valentum defense Mouton asserts, however, is based on the alleged concealment of the defect. Concealment of a defect directly contradicts Mouton's redhibition claim. Thus, Mouton's contra non valentum defense fails.

### IV. Material Issues of Fact

In his third assignment of error, Mouton contends that the trial court manifestly erred in granting Defendants' exceptions by summary judgment where he presented material issues of fact.

Our review of the record shows that the exceptions were peremptory exceptions of prescription. As previously discussed, there is no requirement for the submission of sworn affidavits or testimony "[o]n the trial of the peremptory exception." La.Code Civ.P. art. 931. Since the matter before the trial court was not on summary judgment which is tried utilizing affidavit testimony, Mouton's assignment of error is without merit. Accordingly, the trial court was not manifestly erroneous in this regard.

### V. Credibility Determinations

In his fourth assignment of error, Mouton contends that the trial court manifestly erred by making impermissible credibility determinations. Mouton alleges that since he submitted sworn affidavit testimony creating a material issue

15

of fact, the trial court made an impermissible credibility determination whereby it favored Defendants' evidence as opposed to his affidavit. In support, Mouton cites *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 4 (La. 2/29/00), 755 So.2d 226, 236, for the proposition that "the trial judge cannot make credibility determinations on a motion for summary judgment."

As previously mentioned, this was not a summary judgment hearing wherein the outcome depends on affidavit testimony. Accordingly, Mouton's assignment of error is without merit, and the trial court was not manifestly erroneous in this regard.

## VI.    Adequate Discovery

In his fifth assignment of error, Mouton contends that the trial court manifestly erred when it denied him time to conduct adequate discovery before hearing Defendants' exceptions of prescription.

Our review of Defendants' exceptions shows that they were based on the time the lawsuit was filed and on Mouton's discovery responses. As indicated above, the lawsuit is prescribed on its face. Since the filing of the lawsuit occurred on April 24, 2012, and in addition to the reasons explained above, December 27, 2011, was the latest date that the lawsuit could have been filed. Mouton had enough time to conduct discovery. According to Mouton's expert's report,[8] which is contained in the record, his expert inspected the generator in September 2012. Since this inspection occurred nine months prior to the June 24, 2013 hearing on the exceptions, Mouton had that time, i.e., nine months, to conduct discovery of an alleged concealment of a defect. Accordingly, Mouton's assignment of error is without merit, and the trial court was not manifestly erroneous in this regard.

---

[8] Mouton's expert is Joey Meloz.

16

## VII. Alternative Legal Theories of Liability

In his sixth assignment of error, Mouton contends that the trial court manifestly and legally erred by dismissing the entire lawsuit even though Defendants' exceptions challenged only a couple of his alternative theories of liability. Mouton filed suit against Defendants for redhibition, negligent installation, breach of contract, negligent maintenance, and negligent repair. Mouton asserts that his redhibitory and negligent installation claims were the only two claims challenged in Defendants' exceptions.[9] Since Defendants' exceptions failed to challenge his breach of contract, negligent maintenance, and negligent repair claims, Mouton contends that the trial court was manifestly erroneous in dismissing these claims.

In its peremptory exception of prescription, Metro Electric excepted to Mouton's lawsuit on the grounds that it "has prescribed and that [Mouton] has no right of action in Redhibition or negligent installation pursuant to La. C.C. art. 2520, et seq." Metro Electric challenged only Mouton's redhibition and negligent installation claims.

In its peremptory exception of prescription, Generac excepted to Mouton's lawsuit "on the grounds that [Mouton's] claims . . . against Generac under Louisiana redhibition law, La. Civ. Code art. 2520, et seq., are prescribed." Thus, Generac challenged only Mouton's redhibition claim.

In order to succeed on a breach of contract claim, the plaintiff must prove the existence of a contract, a breach of that contract, and damages. *See Ledet v. Campo*, 12-1193 (La.App. 3 Cir. 3/16/13), 128 So.3d 1034. In his petition,

_____

[9] Mouton contends that Metro Electric challenged his redhibition and negligent installation claims whereas Generac challenged only his redhibition claim.

Mouton alleged that he "has annually purchased from METRO ELECTRIC an Equipment Maintenance Contract to maintain" the generator. According to Mouton, the generator "failed to function properly and/or required repair service every year, up to and including 2012" and each time he reported problems, Metro Electric "responded by purportedly servicing the [generator] and representing that the problem was taken care of and that [it] would function appropriately 'next time.'" Mouton alleged that, despite Metro Electric's "repeated annual assurances," the generator would "provide automatic substitute electrical service," it "NEVER provided automatic substitute electrical service in the event of an actual interruption in electrical-utility service." Although Metro Electric supposedly "fixed" a problem in February of 2012, Mouton "recall[ed] that the alleged problem on the occasion of that service was one that previously had reportedly been fixed already." Based on the foregoing allegations, Mouton contended that Defendants were liable to him for "Breach of Contract and/or Implied and/or Express Warranties" along with "Negligent Installation, Maintenance, and/or Repair." In his prayer for relief, Mouton seeks actual, consequential, and incidental damages; rescission, including reimbursement of the purchase price along with maintenance and repair costs; attorney fees; court costs; and legal interest.

Upon review of Mouton's petition and accepting his well-pleaded allegations as true, we find that he sufficiently pled that a contract existed between he and Metro Electric. Mouton alleged that Metro Electric, in failing to comply with the requirements provided for in the maintenance contract, breached the contract between the parties and that, as a result of its breach, Mouton suffered damages. Mouton has likewise asserted a claim for negligent maintenance and

18

negligent repair since both arise out of Metro Electric's alleged breach of the maintenance contract.

In determining whether Mouton's contractual claims have prescribed against Metro Electric, the maintenance contract must be viewed separately from the sale and installation contract. The principal obligation of the maintenance contract, which was annually renewed, was that of maintaining the generator. Mouton signed the final maintenance contract in July of 2011. A breach of contract claim "is subject to a liberative prescription of ten-years." La.Civ.Code art. 3499. Based upon the face of the petition, Mouton's claims for breach of contract, negligent maintenance, and negligent repair were timely filed and have not prescribed. Accordingly, the trial court was manifestly erroneous in dismissing Mouton's contractual claims against Metro Electric.

On the other hand, the petition is void of any allegations regarding a contractual relationship existing between Mouton and Generac. Therefore, Mouton failed to state a cause of action against Generac for breach of contract, negligent maintenance, or negligent repair. Accordingly, the trial court was not manifestly erroneous in granting Generac's exception.

This matter is remanded to the trial court for further proceedings on the contractual claims against Metro Electric only.

### DECREE

The judgment of the trial court is affirmed in part, reversed in part, and remanded. All costs of this appeal are divided equally between Plaintiff/Appellant, Emile Mouton, and Defendant/Appellee, Metro Electric & Maintenance, Inc.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**